**NOT FOR PUBLICATION**

**FILED**
JAMES J. WALDRON, CLERK

**SEPT. 27, 2010**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **In Re:**<br><br>**TARRAGON CORPORATION,** *et al.***,**<br><br>Debtors. | Case No.: 09-10555 (DHS) **(Lead Case)**<br><br>Administratively Consolidated<br><br>Judge: Donald H. Steckroth, U.S.B.J. |
| **MARTIN SKOLNICK, et al.,**<br><br>Plaintiffs,<br>v.<br>**TARRAGON CORPORATION, et al.**<br><br>Defendants. | Adv. No.:   09-02012 (DHS) |
| **1200 GRAND STREET CONDOMINIUM ASSOCIATION,**<br><br>Plaintiffs,<br>v.<br>**TARRAGON CORPORATION, et al.,**<br><br>Defendants. | Adv. No.:   09-01465 (DHS) |

**OPINION**

**APPEARANCES:**

**MARTIN P. SKOLNICK, ATTORNEY AT LAW**
Martin P. Skolnick, Esq.
301 Route 17 North, Suite 800
Rutherford, New Jersey 07070
*Counsel for Martin Skolnick, Susan Skolnick, Plaintiff Pro Se and Counsel for Cheryl Abramson, Todd Abramson, Judith Anderson, Myron Weiner, Kim Blackmore, Monica Datta, Kim DeRosa, Brian Duis, Todd Miller, Brian Finney, Rick Gyan, Sara Ferry, Patrick Healey, Lincoln Hochberg, Robert Holzberg, Michael Katsaros, James Lake, Erika Lake, Bradford C. Lerman, Shahid Malik, David Missig, Lori Missig f/k/a Lori Petillo, Janine O'Brien, Stephanie Petillo, Ryan Pryor, Kyla Pryor f/k/a Kyla DeMarzio, Harla Seckular, Darren Sikorski, Jordan Silberberg, Justin Silberberg, Manisha Varsani, Steve Warjanka, Lara Warjanka, and James Weinberg*

**CONNELL FOLEY, LLP**
Liza M. Walsh, Esq.
Tricia B. O'Reilly, Esq.
Rukhsanah L. Lighari, Esq.
85 Livingston Avenue
Roseland, New Jersey 07068
*Counsel for Defendants*
*William S. Friedman, Robert Rohdie, and Beth Fisher*

2

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is the motion of William S. Friedman, Robert Rohdie, and Beth Fisher ("Defendants") to dismiss counts of an adversary complaint. The counts arise out of the design, construction, and sale of various condominium units at a planned real estate development. Martin and Susan Skolnick ("Plaintiffs"), along with thirty-four others,[1] are purchasers of condominium units at the real estate development and allege that the Defendants committed common law fraud, consumer fraud, breach of contract, and negligence. The Plaintiffs do not contest the dismissal of their contract or tort claims. However, they object to the dismissal of claims alleging consumer fraud and common law fraud.

The Plaintiffs allege that the Defendants, as corporate officers of the Debtor Tarragon Corporation, were responsible for the creation and distribution of advertising materials containing material misrepresentations as to potential real estate tax savings. The Defendants counter that the Plaintiffs signed a binding agreement containing an integration clause that limits the representations and warranties that a purchaser may rely on and thus, the advertising materials are barred from consideration by the Court under the parol evidence rule. Additionally, the Defendants argue that the Plaintiffs have failed to plead with the requisite degree of particularity under the Federal Rule of Civil Procedure 9(b). The Plaintiffs counter that the information needed to plead with greater particularity lies within the exclusive control of the Defendants and thus they have met the pleading threshold. For the reasons that follow, the Court grants the Defendants' motion to dismiss.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

**I.    Procedural History**

In September 2007, the Plaintiffs filed a complaint in the Superior Court of New Jersey, Law Division, Hudson County, against Tarragon Corporation, Tarragon Realty, 1200 Grand Street Urban Renewal, LLC ("1200 Grand Street"), URSA Development Group, LLC ("URSA"), and Frank Raia. (Defs.' Br. in Supp. of Mot. to Dismiss 2.) The proceeding was thereafter consolidated with an amended complaint filed by Cheryl Abramson, *et al.* on March 8, 2008.[2] (*Id.*) The Plaintiffs' second amended complaint asserts five causes of action against the Defendants. Two claims arise from the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1-20, ("CFA"), one arises under common law

---

[1] Martin Skolnick is an attorney who appears *pro se* in the instant matter and represents the thirty-four plaintiffs in the Abramson complaint.. (Defs.' Br. in Supp. of Mot. to Dismiss 2 n.2.)

[2] Plaintiffs have voluntarily dismissed their claims against defendants Gary Lowitt, Todd Schefler, Alyssa Rohdie, Tamar Rothenberg, and Jill Kaplan. (Defs.' Br. in Supp. of Mot. to Dismiss 2 n.3.)

fraud, one for negligent construction, and one for breach of contract.[3] (*Id*. at 1.) The Skolnicks' complaint, together with Abramson's complaint, were removed to this Court under 28 U.S.C. § 1452(c) on June 18, 2009. (*Id*. at 2.)

On August 14, 2009, this Court consolidated the Skolnick and Abramson complaints with an adversary proceeding brought by 1200 Grand Street Condominium Association ("Association"). (*Id*. at 2-3.) In doing so, the Court found that the adversary proceedings were core proceedings and noted that the Plaintiffs had filed proofs of claim in the underlying bankruptcy. (*Id*. at 3.)

At present, the Defendants seek to dismiss counts I, II, III, IV, and V of the second amended complaint under Federal Rule of Civil Procedure 12(b)(6), as applied to this proceeding through Federal Rule of Bankruptcy Procedure 7012(b). (*Id*. at 1.)

## II.    Defendants' Statement of Facts

This dispute arises from the construction and sale of a condominium complex located in Hoboken, New Jersey, known as 1200 Grand Street Condominium, or "Upper Grand" ("Condo"). (Defs.' Br. in Supp. of Mot. to Dismiss 3.) The Condo was developed by 1200 Grand Street while Tarragon Realty Investors, Inc. ("Tarragon Realty") and URSA Development Group, LLC served as partners in the development. (*Id*.) The Defendants are corporate executives at Tarragon Corporation, an entity related to Tarragon Realty. (Am. Compl. ¶ 25 (Certif. of Liza M. Walsh ("Walsh Certif.") ¶ 3, Ex. 1.))

### A.    The Public Offering Statement and the Purchase Agreement

The Plaintiffs, original purchasers of Condo units, each entered into a Subscription and Purchase Agreement ("Purchase Agreement") with 1200 Grand Street. (Defs.' Br. in Supp. of Mot. to Dismiss 1.) These Purchase Agreements contain integration clauses, which state:

> This Agreement contains the entire agreement between the Seller and the Buyer. Neither party has made any other agreement or promise which is not contained in this Agreement. The Application for Registration of the Condominium which the Seller has filed with the New Jersey Department of Community Affairs is incorporated by reference . . . in this Agreement. The term "Application for Registration" includes any present and future amendments properly filed by the Seller with respect to the documents.

---

[3] Skolnick asserts a sixth cause of action arising under the Planned Real Estate Development Full Disclosure Act, N.J.S.A 45:22A-21 *et seq*., against the corporate defendants and Frank Raia. The sixth count is not asserted against the Defendants in this matter. (Defs.' Br. in Supp. of Mot. to Dismiss 1 n.2.)

(*Id*. at 8; Purchase Agmt., 22 (Walsh Certif. ¶ 4, Ex. 2.))

The "Application for Registration" includes the Public Offering Statement ("POS"). Moreover, the Purchase Agreement specifically references the POS, stating: "The Buyer acknowledges that prior to signing this Agreement, the Seller provided the Buyer with a copy of the Public Offering Statement for the Condominium as currently registered with the New Jersey Department of Community Affairs." (Defs.' Br. in Supp. of Mot. to Dismiss 8; Purchase Agmt., 24 (Walsh Certif. ¶ 4, Ex. 2.))

1200 Grand Street filed and presented its POS for the Condo on June 3, 2004. (POS (Walsh Certif. ¶ 5, Ex. 3.)) The POS set forth, among other things, the taxes and assessments applicable to Condo units and general representations and warranties. (Defs.' Br. in Supp. of Mot. to Dismiss 9.)

With respect to the taxes and assessments applicable to Condo units, the POS stated that the City of Hoboken "has approved the Development for a long term tax exemption under the Long Term Tax Exemption Law, N.J.S.A. 40A:20-1 to -22, pursuant to which 'each Unit Owner will make a payment in lieu of real estate taxes (an 'Annual Service Charge')." (Defs.' Br. in Supp. of Mot. to Dismiss 4; POS 43-46 (Walsh Certif. ¶ Ex. 3.)) This Annual Service Charge was calculated by:

> multiplying (a) an amount equal to the annual aggregate constant payments of principal and interest, assuming a purchase money mortgage encumbering the Unit to have been in an original amount equal to the initial value of the Unit or, if the Unit is held by a Unit Owner, from time to time, the most recent true consideration paid for the Unit in a *bona fide* arm's length sale transaction, plus the total amount of Common Expenses charged to the Unit (the "Annual Gross Revenue") times (b) fifteen (15%) percent.

(Defs.' Br. in Supp. of Mot. to Dismiss 9; POS, 44 (Walsh Certif. ¶ 5, Ex. 3.))

Moreover, the POS provided an example of this calculation, stating:

> [B]y way of illustration only, if a certain Unit has value of $350,000 and the prevailing market interest rates for 30 year mortgage[s] are 5.75% per year, then the annual aggregate constant payments of principal and interest, assuming a purchase money mortgage of $350,000, will equal $24,250.00. If the total annual Common Expense charged to the Unit is $2,400, then the Annual Service Charge will equal $3,982.50 [($24,150 + $2,400) x 15%] [o]r $331.87 per month.

(*Id*.)

5

Attached to the POS was a schedule of projected Annual Service Charges for each unit. According to the schedule, a unit's estimated annual and monthly service charge, based on full occupancy in 2004 dollars, varied per unit and was dependent upon the type and size of the unit and the percentage of one's ownership in common elements. (Defs.' Br. in Supp. of Mot. to Dismiss 10; POS, 44, Ex. A (Walsh Certif. ¶ 5, Ex. 3.)) The POS noted that these projected charges were "just an estimate based on an estimated sales price and estimated Common Assessments for the Units. The actual Annual Service Charge will be based on the sale price which a purchaser pays for a Unit. The Annual Service Charge will change upon any transfer of a Unit." (Defs.' Br. In Supp. of Mot. to Dismiss 10; POS, 46 (Walsh Certif. ¶ Ex. 3.)) The POS further advised:

> [T]he Annual Service Charge description above and Exhibit A to Part I of this Public Offering Statement serve only as an estimate and guideline for prospective purchasers. The Developer will make no representation as to what the actual Annual Service Charge to be charged against a particular Unit will be. Each prospective purchaser is advised to make an independent inquiry with the municipal tax assessor of the City of Hoboken to ascertain the probable Annual Service Charge to be charged assessed [*sic*] against a particular Unit.

(Defs.' Br. in Supp. of Mot. to Dismiss 10; POS, 46 (Walsh Certif. ¶ 5, Ex. 3.))

Lastly, the POS expressly limited all representations and statements not contained in the relevant documents, stating:

> This Public Offering Statement does not knowingly omit any material fact or contain any untrue statement of a material fact. THIS PUBLIC OFFERING STATEMENT DOES NOT CONTAIN A FULL SUMMARY OF ALL OF THE PROVISIONS OF THE VARIOUS DOCUMENTS REFERRED TO HEREIN. STATEMENTS THAT ARE MADE AS TO THE PROVISIONS OF SUCH DOCUMENTS ARE QUALIFIED IN ALL RESPECTS BY THE CONTENTS OF SUCH DOCUMENTS WHICH SHOULD BE CAREFULLY REVIEWED BY ALL PROSPECTIVE PURCHASERS. NO PERSON HAS BEEN AUTHORIZED BY THE DEVELOPER TO MAKE ANY REPRESENTATION WHICH IS NOT EXPRESSLY CONTAINED HEREIN. ANY INFORMATION, DATA OR REPRESENTATION THAT IS NOT CONTAINED IN THIS PUBLIC OFFERING STATEMENT, THE APPLICATION FOR REGISTRATION AS FILED WITH

> THE DIVISION OF CODES AND STANDARDS, BUREAU OF HOMEOWNER PROTECTION, OF THE NEW JERSEY DEPARTMENT OF COMMUNITY AFFAIRS, OR IN THE DOCUMENTS REFERRED TO IN THIS PUBLIC OFFERING STATEMENT MAY NOT BE RELIED UPON. THIS PUBLIC OFFERING STATEMENT MAY NOT BE CHANGED OR MODIFIED ORALLY.

(Defs.' Br. in Supp. of Mot. to Dismiss 8-9; POS, 56-57 (Walsh Certif. ¶ Ex. 3.))

### B.    The Windows

Three causes of action are based on the Plaintiffs' dissatisfaction with the installation of the windows in their unit. Allegedly, the windows "were installed improperly and do not open and close properly." (Pls.' Am. Compl. ¶¶ 56-57.) The Plaintiffs claim that the defects required them to spend "diverse sums of money" to cure. (Pls.' Am. Compl. ¶ 58.) They further argue that generally the Defendants did not construct the Condo "in a good and workmanlike manner, but carelessly and negligently performed the services required of it under the contract." (Pls.' Am. Compl. ¶ 55.)

The Plaintiffs also assert a claim for breach of contract on the same basis. They contend that the Defendants "breached their obligations under the Contract[,]"[4] as the Defendants "warranted that the Unit would be free from material and workmanship defects." (Pls.' Am. Compl. ¶¶ 60-63.)

Finally, they assert a claim under the CFA on the same grounds, alleging the Defendants falsely represented that "Tarragon Realty Investors, Inc. and their local development partners, URSA Development Group and Frank Raia, showcase their dedication to Upper Grand and commitment to excellence in their thoughtful planning, construction processes and high quality materials." (Pls.' Am. Compl. ¶ 68.) (internal quotation marks omitted). The Plaintiffs argue that the representation is false, using the defective windows as an example, and constitutes an "unconscionable commercial practice," from which they "have suffered an ascertainable loss of money and property." (Pls. Am. Compl. ¶¶ 70-72.)

### III.    Plaintiffs' Additional and Disputed Facts

According to the Plaintiffs, the Defendants oversaw and were responsible for creating and distributing advertisements regarding the Condo units. (Pls. Br. in Opp'n to Defs.' Mot. to Dismiss 5.) The main selling point of these advertisements was a twenty-year tax abatement that resulted from an agreement reached by 1200 Grand Street and the

---

[4] Presumably, the contract the Plaintiffs are referring to is the Subscription and Purchase Agreement. (Defs.' Br. in Supp. of Mot. to Dismiss 6 n.6.)

7

City of Hoboken ("Financial Agreement").[5]  (*Id*.; *see also* Financial Agmt. (Skolnick Certif. ¶ 5, Ex. B.))  The written advertising materials, for example, promised that purchasers' real estate tax liabilities would be "half the cost of customary real estate taxes" during the course of the twenty-year tax abatement.  (*Id*.)  Written advertising materials also stated as follows:

> Residents of Upper Grand will benefit from a long-term stabilized real estate tax program.  In lieu of real estate taxes, owners will pay a tax deductible 'Annual Service Charge' that is approximately half the cost of customary real estate taxes.
>
> The condominiums in Upper Grand benefit from a tax pilot program.  Under this program, in lieu of standard real estate taxes, owners will pay a tax-deductible 'Annual Service Charge' equal to approximately 56 cents on the dollar of Hoboken real estate taxes.  This results in significant savings for Upper Grand owners.  The monthly ownership expense of an Upper Grand residence will be significantly lower in comparison to similarly-priced properties, generating an additional $25,000 or more in equity for the Upper Grand homeowner (based upon the average price of an Upper Grand residence).

(Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss 6-7; Advertising Materials, 1-2 (Skolnick Certif. ¶ 4, Ex. A.))

In addition, a large sign painted on the wall of the sales office reads: "TAX PILOT PROGRAM: Residents of the Upper Grand will benefit from a long-term stabilized real estate tax program.  In lieu of real estate taxes, owners will pay a tax deductible 'Annual Service Charge' that is approximately half the cost of ordinary real estate taxes."  (Pls. Br. in Opp'n to Defs.' Mot. to Dismiss 7.)

The Plaintiffs state they decided to purchase Condo units as a result of these statements.  (*Id*.)  However, after they closed on their units and began receiving tax bills from the City of Hoboken, they noticed that their ownership expenses were significantly higher than expected.  (*Id*. at 8.)

Furthermore, the POS filed and presented by 1200 Grand Street provided an exhibit which included a schedule of estimated taxes for each Condo unit.  (*Id*. at 6.)  This exhibit "significantly underestimate[d]" Plaintiffs' taxes in that it used a 30-year mortgage term when the Financial Agreement mandated the use of a 20-year mortgage term.  (*Id*.)  The POS also provided that "[t]he Annual Service Charge will change upon

---

[5] The Financial Agreement was never provided to the Plaintiffs.  Rather, the first time the Plaintiffs received a copy of the agreement was during discovery, when the matter was pending in state court. (*Id*. at 5-6.)

8

any transfer of a Unit." Contrary to this provision, however, the Plaintiffs did not have any additional equity since the tax savings could not be transferred to a subsequent purchaser. (*Id*. at 8.)

The Plaintiffs do not object to dismissal of Counts III [Negligence] and IV [Contract] of their Complaint as to Defendants only with prejudice. (*Id*. at 2.) Also, Plaintiffs do not object to dismissal of Count V [Consumer Fraud] of their Complaint as to Defendants only without prejudice[6] due to an admitted lack of sufficient facts to assert this claim against the Defendants. (*Id*.)

## DISCUSSION

### I. Common Law Fraud

Under common law, five elements must be proven to show fraud: (1) a material misrepresentation of a presently existing or past fact, (2) made with knowledge or belief of its falsity, (3) with the intent that the other party rely on it, (4) reasonable reliance thereon and, (5) damages as a result. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997). In the present case, the alleged material misrepresentations were made by Defendants through written advertisements concerning tax savings. (*See* Pls.' Br. in Opp'n to Mot. to Dismiss). Plaintiffs allege that Defendants knew purchasers would never realize the advertised savings and, as a result of their reliance upon the advertisements, Plaintiffs have realized savings that are significantly less than were promised. (*Id*.)

In order for the Plaintiffs to succeed on their claim for fraud they must escape application of the parol evidence rule. The Plaintiffs signed an agreement containing an integration clause that seeks to prevent reliance on representations beyond the written agreement.

### A. Parol Evidence

The Defendants contend that, under the parol evidence rule, the Plaintiffs cannot rely on representations made prior to entering the written agreement. Generally, the parol evidence rule dictates that,

> (1) A binding integrated agreement discharges prior agreements to the extent that it is inconsistent with them.
> (2) A binding completely integrated agreement discharges prior agreements to the extent that they are within its scope.
> (3) An integrated agreement that is not binding or that is voidable and avoided does not discharge a prior agreement. But an integrated agreement, even though not binding, may

---

[6] Despite the lack of objection, personal liability of corporate officers for their torts and their liability under the CFA is briefly discussed below.

>       be effective to render inoperative a term which would have
>       been part of the agreement if it had not been integrated.

Restatement (Second) of Contracts § 213.

Parol evidence is not barred in every circumstance. Extrinsic evidence may be admissible to show fraud in the inducement. *See Ocean Cape Hotel Corp. v. Masefield Corp.*, 63 N.J. Super. 369, 378 (App. Div. 1960). In a fraud case, extrinsic evidence is offered not to vary the terms of the agreement, but to show the agreement is void or voidable. *Id.* However, one may not circumvent the rule merely by alleging fraud. The general rule remains "that a parol agreement which is in terms contradictory of the express words of a contemporaneous or subsequent written contract, properly interpreted, necessarily is ineffectual and evidence of it inadmissible . . . ." *Williston, Contracts § 639* (Rev. ed. 1936). As expressed in *Winoka Village, Inc. v. Tate*, 16 N.J. Super. 330 (App. Div. 1951), one may not rely on extrinsic evidence that expressly contradicts a written agreement, even where the plaintiff alleges fraud. *Winoka Village, Inc. v. Tate*, 16 N.J. Super. 330, 333 (App. Div. 1951).

In *Winoka*, the defendant-tenant claimed that he was fraudulently induced by plaintiff-landlord to sign two, three-year leases. Prior to signing, the defendant expressed concern over entering a three-year lease due to uncertainty in his employment situation. The plaintiff's superintendent assured him that the policy was to retain the security deposit and that "nothing more would be required of him." *Id.* at 332. The defendant claimed to have entered the leases in reliance on those statements even though the lease agreement expressly stated a three-year term. Subsequently, the defendant left before the expiration of the term and was sued by the plaintiff to recover back rent. The plaintiff prevailed on appeal, where the court held that extrinsic evidence is "ineffectual in that circumstance to avoid the obligations [the defendant] knowingly assumed." *Id.* at 333.

In *Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 251 N.J. Super. 570 (App. Div. 1991), the Appellate Division relied heavily on its holding in *Winoka*. There, the plaintiffs entered into a written lease for a 1989 Lincoln Town Car. One of the plaintiffs traded in his 1984 Cadillac for a $6,000 allowance. The written lease expressly stated the trade-in was a "capitalized cost reduction applied as the down payment to reduce the costs of the lease." *Id.* at 572. The lease also contained an integration clause limiting the terms to the four corners of the instrument. Contrary to the lease, the plaintiffs claimed fraud arguing that the parties agreed that plaintiffs would be paid the $6,000 in cash. The trial court held, and the appellate court affirmed, that extrinsic evidence offered to vary the express terms of the written agreement was inadmissible. *Id.* at 573.

The Plaintiffs here rely heavily on the ruling in *Berman v. Gurwicz*, 189 N.J. Super. 89 (Ch. Div. 1981). In *Berman*, the plaintiffs were purchasers of condominiums seeking to cancel a 90-year recreation lease. Defendants entered into the lease on behalf of the plaintiff condominium association before plaintiffs purchased their units and took control of the plaintiff condominium association. The court found fraudulent conduct on the part of the defendants. The lease was cancelled as it was concealed from the

10

condominium association and thus, was never actually adopted after the plaintiffs gained control.  The Plaintiffs here argue that *Berman* stands for the proposition that purchasers should be able to assume that contracts are consistent with prior statements.  (*See* Pls.' Br. in Opp'n to Mot. to Dismiss at 14-15.)

*Berman*, however, is factually and legally dissimilar to the present case.[7]  The defendants in *Berman* concealed or failed to disclose the existence of the recreation lease, despite an obligation to do so.  The defendants did not furnish purchasers with documents disclosing the lease until shortly before or at the moment of closing.  *Berman*, 189 N.J. Super at 95-96.  It was the lack of disclosure and concealment of the lease which moved the court to find for the purchasers.  *Berman* fits the classic rationale for the fraud exception to the parol evidence rule.[8]  The extrinsic evidence was admitted to show that the written agreement was voidable and not to vary the terms of the written agreement.

No analogous behavior has been alleged in the case at bar.  Here, the Plaintiffs seek to admit extrinsic evidence to substitute one set of representations for another.  The instant matter has more in common with *Winoka* and *Filmlife*.  In each, as in the present case, Plaintiffs signed contracts that expressly contradicted prior agreements or representations.  There is no evidence that the Defendants here attempted to conceal any information they were required to disclose to the plaintiffs.

The present case falls within the confines of the general rule.  The exception for fraud in the inducement is not applicable here.  The alleged fraud deals with matters "expressly addressed in the integrated writing," and the Plaintiffs seek to vary the terms of the agreement rather than to show it is void or voidable.  *Filmlife*, 251 N.J. Super. at 574.  Thus, the advertisements are inadmissible and the common law fraud claim must fail.

### B.    Consumer Fraud Act

The purpose of the CFA, N.J.S.A. 56:8-1 *et seq.*, is to address fraudulent, deceptive, and other similar marketing or advertising practices that harm consumers.  *See Daaleman v. Elizabethtown Gas Co.*, 77 N.J. 267, 272 (1978).  The elements of a CFA claim are: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal nexus between the "method, act, or practice declared unlawful" and the consumer's "ascertainable loss."  *New Jersey Citizen Action v. Schering*, 367 N.J. Super. 8, 12-13 (App. Div. 2003).  The CFA "sets forth three general

---

[7] *Berman* also states that the reliance prong of a fraud claim is unsatisfied when a purchaser is represented by counsel.  In that case, "it cannot be said that . . . plaintiffs relied upon any misrepresentations or concealments of the defendants respecting the lease; they relied upon counsel and therefore cannot recover on a theory of fraud."  *Berman*, 189 N.J. Super. at 103.  It is not apparent from the briefs which, if any, of the Plaintiffs would be barred from reliance on these grounds.

[8] "[E]vidence of fraud in the inducement will suspend the parol evidence rule because fraud prevents formation of a valid contract – no contract, no parol evidence rule." *Mellon Bank v. First Union Real Estate*, 951 F.2d 1399, 1408 (3d Cir. 1991) (quoting *Betz Lab Inc. v. Hines*, 647 F.2d 402, 406 (3d Cir. 1981)).

11

categories of unlawful acts: (1) affirmative acts; (2) knowing omissions; and (3) regulatory violations." *Bosland v. Warnock Dodge, Inc.*, 396 N.J. Super. 267, 272 (App. Div. 2007) (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994)). The CFA is to be construed liberally to accomplish its broad purpose and protect the public. *See Royale Luau Resort, LLC v. Kennedy Funding, Inc.*, No. 07-1342, 2008 U.S. Dist. Lexis 11902 (D.N.J. Feb. 19, 2008); *See also Lettenmaier v. Lube Connection, Inc.*, 162 N.J. 134, 139 (1999); *Leon v. Rite Aid Corp.,* 340 N.J. Super. 462, 468 (App. Div. 2001). As a consequence, the Act can be applied to any unfair practice even where merchants act in good faith. *Id.*; *See Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 11-12 (2004).

A claim under the CFA need not allege all of the elements of common law fraud. In the case of an affirmative act, a plaintiff does not need to prove a defendant's intent nor actual deceit or fraud. *Cox*, 138 N.J. at 17-18. The statute at issue distinguishes between omissions and affirmative acts, and reads in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with that sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]

N.J.S.A. 56:8-2.

Here, the alleged misrepresentation qualifies as an affirmative act under the CFA. As such, "it is not necessary that the plaintiff show either the defendant's knowledge or intent or that the misrepresentation was of a material fact." *Leon*, 340 N.J. Super. at 469. Rather, "[t]he capacity to mislead is the prime ingredient of deception or an unconscionable commercial practice." *Leon*, 340 N.J. Super. at 470 (quoting *Fenwick v. Kay American Jeep, Inc.*, 72 N.J. 372, 377 (1977)). The Plaintiffs also allege the occurrence of acts of omission. As to those acts, however, one must demonstrate a defendant's knowledge and intent. *Leon*, 340 N.J. Super. at 469.

Given the Act's remedial nature and plaintiff-friendly interpretation, it may seem that the Plaintiffs are well positioned to succeed under the CFA. The advertised statements are material, as they are certain to influence a buyer's decision to purchase. Further, reality failed to equal the Plaintiffs' expectations generated by those advertisements. And finally, inducement to purchase, in this instance, was the obvious purpose of the advertised statements.

However, if the "plaintiffs cannot introduce extrinsic evidence to contradict the express terms of the [contract], they are also precluded from proving the claimed unconscionable commercial practice." *Filmlife*, 251 N.J. Super. at 576; *See Kern v. Huettl*, No. A-1217-07T2, 2009 N.J. Super. Unpub. Lexis 2233 (App. Div. August 13, 2009). Here, the parol evidence rule operates to exclude the pertinent extrinsic evidence. The CFA claim is still a claim of fraud and must meet the fraud exception to the parol evidence rule. As in *Filmlife*, the reasoning that bars extrinsic evidence under common law fraud operates to the same effect under the statutory fraud claim. In the CFA context, the extrinsic evidence is still offered to vary the express terms of a written agreement freely entered into. Thus, it is inadmissible and the claim fails.

## II.    Personal Liability of Corporate Officers

The Plaintiffs allege that the individual Defendants are responsible for the negligent construction of certain elements of the Condominium. It is well settled that "[c]orporate officers are liable for their torts, although committed when acting officially." *Kugler v. Koscot Interplanetary, Inc.*, 120 N.J. Super. 216, 256 (citing 3 *Fletcher Cyclopedia of Corporations* (Perm. Ed.), §§ 1135, pp. 778). Typically, the 'participation theory' provides the basis for actions against those officers. The participation theory allows for liability when the officer is "sufficiently involved in the commission of the tort." *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 303 (2002). An officer who personally makes or even sanctions tortious behaviors may be found liable under the theory. *See Kugler*, 120 N.J. Super. at 257. "[P]roof of personal participation by an individual in [the] . . . regulatory violation . . ." is needed under the CFA as well. *Allen v. V & A Brothers, Inc.*, 414 N.J. Super. 152, 160 (App. Div. 2010). A predicate to an officer's liability "is a finding that the corporation owed a duty of care to the victim, the duty was delegated to the officer and the officer breached the duty of care by his own conduct." *Saltiel*, 170 N.J. at 303.

Here, the Plaintiffs have not established the type of personal participation needed to hold corporate officers liable. There are no allegations of fact that establish the delegation of duties to the Defendants or any breach of such duties. Further, there are no allegations to support that the Defendants were personally negligent or that they sanctioned the negligent actions of others. The Plaintiffs merely allege that the Defendants are liable in tort without providing factual support. The Plaintiffs' CFA claims are equally lacking in factual support. Thus, this Court holds the Defendants cannot be held personally liable for negligence or violation of the CFA.

## III.    Failure to Plead Under Federal Rule of Civil Procedure 9(b)

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim is made applicable in an adversary proceeding pursuant to Bankruptcy Rule 7012. Fed. R. Bankr. P. 7012; Fed. R. Civ. P. 12(b)(6). Under Federal Rule of Civil Procedure 8, pleadings require "only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give fair notice of what the . . . claim is and the

13

grounds upon which it rests." *Bell Atlantic v. Twombley*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *In re Rockefeller Ctr. Props. Secs. Litig.*, 311 F.3d 198, 215-216 (3d Cir. 2002).

Still, mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombley*, 550 U.S. at 555. Thus, Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombley*, 550 U.S. at 555 n.3. *Twombley* explicitly retired the 'no set of facts' doctrine laid out in *Conley*. *Id.* at 563. "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombley*, 550 U.S. at 556).

Pursuant to Bankruptcy Rule 7009, a 12(b)(6) motion to dismiss may be predicated upon a plaintiff's failure to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which provides that,

> [i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Federal Rule of Civil Procedure 9(b).

The purpose of pleading with "particularity" is to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Often, the requirement is deemed satisfied by allegations of date, place or time. However, such allegations are not required as "[p]laintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id*.

Though Rule 9(b) presents a heightened threshold for pleadings of fraud, it is not to be applied without flexibility. *See* C. Wright & A. Miller, 5 *Federal Practice and Procedure* § 1298, at 407 (1969). Rigid application of Rule 9(b) prior to discovery "may permit sophisticated defrauders to successfully conceal the details of their fraud." *In re Craftmatic Securities Litigation*, 890 F.2d 628, 645 (3d Cir. 1989) (quoting *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, at 99-100 (3d Cir. 1983)). Despite the Rule's flexible nature, plaintiffs "must accompany their allegations with facts indicating why the charges against defendants are not baseless and why additional information lies exclusively within defendants' control." *Id*. at 646.

14

Finally, a plaintiff must "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *In re Norvergence*, 405 B.R. 709, 726-727 (Bankr. D.N.J. 2009).

Here, the Plaintiffs make general claims that the Defendants oversaw and were responsible for "creating and distributing false advertising materials." (*See* Pls.' Br. in Opp'n to Mot. to Dismiss.) The second amended complaint refers to little more than the Defendants' positions within Tarragon as forming the basis for their common law fraud claim. Ultimately, even when read in the light most favorable to the Plaintiffs, the pleadings take the form of bare conclusions rather than specific factual grounds upon which a claim for fraud may rest against each defendant.

The pleadings are equally deficient with respect to the consumer fraud claims. The pleading requirement of Rule 9(b) is also applicable to claims of fraud under the CFA. *Campor, Inc. v. Brulant, LLC*, No. 09-5465, 2010 U.S. Dist. Lexis 32189 (D.N.J. Apr. 1, 2010) (citing *FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994)). The Plaintiffs' allegations are no less conclusory in the CFA context than they are under common law. Thus, the Plaintiffs fall short of meeting their pleading burden.

## **CONCLUSION**

For the reasons stated herein, the Defendants' motion to dismiss is granted.

An Order in conformance with this Opinion has been entered and a copy is attached.

*s/    Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: September 27, 2010

15