**NOT FOR PUBLICATION**

**FILED**
JAMES J. WALDRON, CLERK

**OCT. 1, 2010**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **In Re:** | Case No.:    09-10555 (DHS) |
| **TARRAGON CORPORATION,** *et al.***,** | Judge:    Donald H. Steckroth, U.S.B.J. |
| Debtors. | |
| **1200 GRAND STREET CONDOMINIUM ASSOCIATION,** | Adv. Pro. No.:    09-01465 (DHS) |
| Plaintiff, | |
| v. | |
| **TARRAGON CORPORATION,** *et al.***,** | |
| Defendants, | |
| and | |
| **URSA DEVELOPMENT GROUP, LLC, MARK SETTEMBRE, and MICHAEL SCIARRA,** | |
| Defendants/<br>Third-Party Plaintiffs, | |
| v. | |
| **WILLIAM S. FRIEDMAN<br>AND ROBERT ROHDIE,** | |
| Third-Party Defendants. | |

**OPINION**

**APPEARANCES:**

**WOLLMUTH MAHER & DEUTSCH, LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue, 12th Floor
New York, New York 10110
*Counsel for Third-Party Plaintiffs*

**CONNELL FOLEY, LLP**
Liza M. Walsh, Esq.
Tricia B. O'Reilly, Esq.
Rukhsanah L. Lighari, Esq.
85 Livingston Avenue
Roseland, New Jersey 07068
*Counsel for Third-Party Defendants*
*William S. Friedman and Robert Rohdie*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is a motion of William S. Friedman and Robert Rohdie ("Third-Party Defendants") to dismiss cross-claims asserted by Michael Sciarra, Mark Settembre, and URSA Development Group, LLC ("Third-Party Plaintiffs") in their third-party complaint. The cross-claims arise from a first amended complaint filed by 1200 Grand Street Association ("Association") against various individuals and corporate entities responsible for the development and construction of 1200 Grand Street Condominium in Hoboken, New Jersey ("Condo"). The third-party complaint seeks to hold the Third-Party Defendants responsible for implied or express indemnification and contribution for any liability the Third-Party Plaintiffs may incur under the first amended complaint.

The Third-Party Defendants argue that they are not party to a binding agreement that provides for indemnification nor do they have a special legal relationship with the Third-Party Plaintiffs required for a finding of implied indemnification. Further, they assert that the Comparative Negligence Act does not provide for a private or separate cause of action among joint tortfeasors nor can the Third-Party Defendants be considered "joint tortfeasors" under New Jersey law. Lastly, they argue that the underlying claims sound in contract, not tort and therefore they are not liable for contribution to the Third-Party Plaintiffs. Conversely, the Third-Party Plaintiffs argue that the parties are bound by an operating agreement that purportedly includes an indemnification clause. In addition, they argue that they are entitled to implied indemnification, regardless of their relationship with the Third-Party Defendants, due to the Third-Party Plaintiffs' alleged vicarious liability as to the claims brought by the Association. They further allege that the Third-Party Defendants may be held personally liable and as such, they are "joint tortfeasors" and may be liable for contribution under New Jersey law. For the reasons that follow, the Court grants the Third-Party Defendants' motion to dismiss, but will allow the Third-Party Plaintiffs to amend their complaint to include greater particularity and specificity in their allegations.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

**I.      Procedural History**

In December 2008, the Association filed a first amended complaint in the Superior Court of New Jersey, Law Division, Hudson County, against 1200 Grand Street Urban Renewal, LLC d/b/a Tarragon, Thirteenth Street Development, LLC, Tarragon Realty Investors, Inc., URSA Development Group, LLC, Mark Septembre (*sic*), Michael Sciarra, Block 109 Hoboken Property Company, and the City of Hoboken. (Third-Party Defs.' Br. in Supp. of Mot. to Dismiss 2-3) Tarragon and its related entities filed for chapter 11 bankruptcy between January and February of 2009. (*Id.*) On January 30, 2009, the Third-Party Plaintiffs filed their answer to the Association's amended complaint, including a third-party complaint. (*Id.* at 1) The third-party complaint asserted cross-claims for contractual and/or express indemnification and contribution under the New Jersey Joint Tortfeasor's Act and New Jersey Comparative Negligence Act

against Friedman and Rohdie. (Third-Party Pls.' Am. Ans. to Am. Compl. and Am. Third-Party Compl. 14-15)

On March 3, 2009, the Defendants/Third-Party Plaintiffs filed an amended answer to the Association's amended complaint along with an amended third-party complaint asserting the above claims against the Third-Party Defendants, thirteen other named defendants, and John Doe's 1-20.[1] (*Id.* at 17-20) On March 17, 2009, the Third-Party Plaintiffs filed a Notice of Removal to the United States District Court pursuant to 28 U.S.C. § 1452(a). (Third-Party Defs.' Br. in Supp. of Mot. to Dismiss 3) The District Court referred the matter to this Court. (*Id.*) On March 25, 2010, this Court granted a motion for relief from the discovery stay brought by the Association and thereafter, entered a Joint Order Scheduling Pretrial Discovery Proceedings, triggering certain discovery deadlines. (*Id.*)

At present, the Third-Party Defendants seek to dismiss counts I and II of the amended third-party complaint under Federal Rule of Civil Procedure 12(b)(6), as applied to this proceeding through Federal Rule of Bankruptcy Procedure 7012(b).

## II.     Third-Party Defendants' Statement of Facts

The dispute arises from claims asserted by the Association against the Third-Party Plaintiffs. The Association brought suit on behalf of the owners of units in the Condo, which was jointly developed by Tarragon and URSA Development. (*Id.* at 3-4) The Third-Party Plaintiffs seek to hold the Third-Party Defendants liable for all counts asserted against them in the Association's amended complaint. The Third-Party Defendants are corporate officers at Tarragon and its subsidiary, Tarragon Development Corporation, respectively. (Third-Party Pls.' Am. Compl. ¶ 11, 13 (Cert. of Paul R. DeFilippo ("DeFilippo Cert.") ¶ 3, Ex. 1))

### A. The Association's Amended Complaint

The Association's amended complaint asserts thirteen causes of action, twelve of which are asserted against the Third-Party Plaintiffs.[2] Those claims concern defects in design, construction, maintenance, and repairs of the Condo as well as breaches of the Public Offering Statement ("POS") and the Subscription and Purchase Agreement. (Third-Party Defs.' Br. in Supp. of Mot. to Dismiss 4) Specifically, the Association claims breaches of representations and warranties contained in the POS and other agreements, violations of statutory warranties in the Planned Real Estate Development Full Disclosure Act,[3] breaches of fiduciary duties by the

---

[1] Additional third-party defendants are Robert P. Rothenberg, Todd M. Schefler, Erin D. Pickens, Kathryn Mansfield, Todd C. Minor, Michael C. Johnson, Lance Liebman, Lawrence G. Schafran, Martha E. Stark, Raymond V.J. Schrag, Carl B. Weisbrod, Jewel Contracting Co., Inc., and Minno & Wasco Architects and Planners, P.C.. John Doe's 1-20 are "individuals, businesses, corporations, associations, and partnerships and/or other entities, and at all times pertinent hereto were involved in the facts and circumstances of [the Association's] Amended Complaint." (Third-Party Pls.' Am. Ans. to Am. Compl. and Am. Third-Party Compl. 20)

[2] Michael Sciarra and Mark Settembre are named as defendants individually in the Association's amended complaint as they are sole shareholders of URSA Development Group, LLC. (Pl.'s Am. Compl. 2-3)

[3] N.J.A.C. 5:26-7, -7.3, and -7.2(c) (Third-Party Defs.' Br. in Supp. of Mot. to Dismiss 6) (Walsh Cert., Ex. 2 at ¶ 31)

4

Board of Trustees, violations of the Consumer Fraud Act,[4] violations of implied warranties and obligations,[5] negligence in construction and design, and fraud. (*Id*. at 4-9)

In sum, the basis for the Association's claims emanate from alleged breaches of contract and statutory violations. The Association's complaint does not name William Friedman and Robert Rohdie as defendants. Instead, the Association asserts claims against Tarragon and Tarragon Development Corporation.

### B. The Third-Party Complaint

The Third-Party Plaintiffs seek to hold the Third-Party Defendants responsible for any liability they may incur under the Association's amended complaint. (Third-Party Defs.' Br. in Supp. of Mot. to Dismiss 9) The Third-Party Plaintiffs disclaim any and all responsibility for the relevant agreements and the alleged breaches. They seek "express, contractual and/or implied indemnification" from the Third-Party Defendants for liability stemming from the Association's claims. (*Id*. at 10) (Walsh Cert. Ex. 1 at 20, ¶¶ 25-28) In addition, they assert claims for contribution under the New Jersey Joint Tortfeasor's Contribution Law and the Comparative Negligence Act.

## III.   Third-Party Plaintiffs' Additional and Disputed Facts

Third-Party Defendants William Friedman and Robert Rohdie were allegedly the chief executive officers of Tarragon and Tarragon Development Corporation, respectively, during the relevant time period.[6] (Third-Party Pls.' Br. in Opp'n to Mot. to Dismiss 2) The Condo was developed by both Tarragon and URSA who had created a separate LLC[7] governed by an operating agreement. (*Id.*) The operating agreement purportedly details the parties' responsibilities and allegedly provides for the indemnification of its members and managers.[8] (*Id.*)

Furthermore, the Third-Party Plaintiffs allege that Friedman and Rohdie controlled Tarragon and caused the entity to "take the actions at issue in [the Association's complaint], including architectural design, construction, maintenance and repair [of the Condo] . . ." and also "[to make] the representations contained in the POS, and the alleged breaches of the contract." (*Id*. at 4) (*See* Am. Third-Party Compl. ¶¶ 3) In essence, the Third-Party Plaintiffs allege that the

---

[4] N.J. Stat. § 56:8-1 to -20 (Third-Party Defs.' Br. in Supp. of Mot. to Dismiss 8) (Walsh Cert. Ex. 2 at 58-59)

[5] Notably, the warranty of habitability, marketability, fit for a particular purpose, and good faith and fair dealing. (Third-Party Defs.' Br. in Supp. of Mot. to Dismiss 7) (Walsh Cert. Ex. 2 at ¶ 42-49)

[6] During the relevant time period, it is also alleged that both Friedman and Rohdie were directors of Tarragon and Friedman was Chairman of the Board. (Third Party Pl.'s Br. in Opp'n to Mot. to Dismiss 2)

[7] In the present case, the LLC at issue is 1200 Grand Street Urban Renewal, LLC.

[8] "Tarragon was primarily responsible for obtaining and structuring all third party financing, for <u>supervising construction of the project</u> and for providing "back office" support for the project . . . . Each of the LLCs . . . expressly agreed . . . to indemnify its members and Managers to the fullest extent permitted by law and specifically in the New Jersey Limited Liability Company Act, [Section 12.3], and to indemnify its Managers . . . against all losses incurred by the Managers in respect of any act or omission by the Managers, except for gross negligence, willful neglect or intentional misconduct [Section 18.13]." (Third Party Pl.'s Br. in Opp'n to Mot. to Dismiss 2) (emphasis in the original).

Third-Party Defendants, specifically Friedman and Rohdie, controlled the development of the Condo and directly or indirectly caused all actions that underlie the Association's amended complaint. (Third-Party Pls.' Br. in Opp'n to Mot. to Dismiss 4-5)

## DISCUSSION

I.  **Third-Party Plaintiffs' Claim for Indemnification**

The Third-Party Plaintiffs assert a cross-claim against the Third-Party Defendants for express, contractual, and/or implied indemnification alleging that their liability to the Association is solely the result of the Third-Party Defendants' actions.

### A. Third-Party Plaintiffs' Claim for Contractual Indemnification

Whether a contract between parties provides for indemnification is a relatively simple matter. If an indemnification clause exists, one must determine the limitation of the clause consistent with the intent of the parties. There is a "bright-line" rule stating that "a contract will not be construed to indemnify the indemnittee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms." *Mantilla v. NC Mall Associates*, 167 N.J. 262, 272-73 (2001) (quoting *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 103 N.J. 177, 191) (applying the rule in a workers' compensation case)).

Here, the Third-Party Plaintiffs are accused of negligence and other affirmative wrongdoing. However, they do not identify an agreement in their amended third-party complaint that would support a finding of express or contractual indemnification. Assuming, *arguendo*, that the operating agreement applied to the Condo, the Third-Party Defendants are neither party to the agreement nor bound by its terms. Thus, the Third-Party Plaintiffs' cross-claim for express or contractual indemnification fails.

### B. Third-Party Plaintiffs' Claim for Implied Indemnification

In addition to the cross-claim for contractual indemnification, the Third-Party Plaintiffs argue they are entitled to common law or implied indemnification from the Third-Party Defendants. A claim for implied indemnification arises "without agreement, and by operation of law to prevent a result which is regarded as unjust or unsatisfactory." W. Keeton, D. Dobbs, R. Keeton, D. Owens, *Prosser & Keeton on The Law of Torts* § 51 at 341 (5th ed. 1984). The doctrine's history in New Jersey proves the proposition that "it is extremely difficult to state any general rule or principle as to when indemnity will be allowed and when it will not." *Prosser & Keeton* § 51 at 343; *See Ramos v. Browning Ferris Industries of South Jersey, Inc.*, 103 N.J. 177 (1986) (finding implied indemnification was barred by the Workers' Compensation Act, N.J. Stat. § 34:15-8).

Generally, there are two routes a court may take in determining implied indemnification. The first is a finding of both a special legal relationship between the indemnitor and the indemnitee and a plaintiff's vicarious liability. The second is found when one party's liability is

purely vicarious and free of fault. *See Ramos*, 103 N.J. 177 (1986). The case law in New Jersey supports indemnification founded upon either a special relationship or vicarious liability.[9] *See Adler's Quality Bakery, Inc. v. Gaseteria Inc.*, 32 N.J. 55 (1960) (allowed an indemnification claim to proceed where liability was alleged to be merely constructive); *See also Ruvolo v. United States Steel Corporation*, 133 N.J. Super. 362 (N.J. Super. Ct. Law Div. 1975) (applied common law indemnification based on lessor-lessee relationship); *Ramos*, 103 N.J. at 189-190 (acknowledging *Adler* "[r]ecognized an indemnity claim in the absence of a special relationship . . . .").

"[O]ne branch of common-law indemnity shifts the cost of liability from one who is constructively or vicariously liable to the tortfeasor who is primarily liable." *Promaulayko v. Johns Manville Sales Corp.*, 116 N.J. 505, 511 (1987) (citing *Adler*, 32 N.J. at 80). New Jersey law will not "[p]ermit an active wrongdoer in the absence of a contractual understanding between the parties to obtain indemnity from another wrongdoer and thus escape any responsibility."[10] *Cartel Capital Corp. v. Fireco of New Jersey*, 81 N.J. 548, 566 (1980).

In *Adler*, the owner of an airplane that crashed into a television tower was initially held strictly liable, under a New Jersey statute, for damages incurred by the plaintiffs. The Supreme Court of New Jersey reversed the Appellate Division and allowed the owner to maintain a claim for indemnity against the manufacturer. The Court ignored the absence of a special relationship in its holding and focused on the fact that the owner was statutorily liable and may be indemnified if the owner could show he was not at fault.

In *Cartel Capital*, the defendant, held strictly liable for distributing and selling a defective product, sought indemnification from the manufacturer. The Appellate Division denied the defendant's cross-claim for indemnification and once again, the Supreme Court disagreed. However, the Court did not reinstate the indemnity claim as the jury in the Superior Court found the defendant's negligence contributed to the plaintiff's injury.

Here, the Third-Party Plaintiffs attempt to establish a claim for implied indemnification in the absence of a special relationship, arguing that they are free of fault and may only incur liability as a result of the actions of the Third-Party Defendants. They erroneously rely on *Adler* to establish and support their claim. The case at bar does not provide the proper context in which to apply the principle outlined in *Adler*. The Third-Party Plaintiffs are not being held strictly or absolutely liable under statutory law nor is their liability to the Association imposed by operation of law without regard to personal fault. To incur liability under the Association's complaint would necessitate a finding of fault. Thus, the Third-Party Plaintiffs are precluded from indemnity on grounds of vicarious or constructive liability.

---

[9] Cases cited by moving Third-Party Defendants ostensibly contradict this proposition. "[A] duty to indemnify . . . arises where a party seeking indemnification can set forth a sufficient legal relationship between itself and the third-party defendant." *Poltrock v. N.J. Auto. Accounts Mgmt. Co.*, 2008 U.S. Dist. Lexis 103351 (D.N.J. Dec. 22, 2008) (Denying a claim for implied indemnification where third-party defendant lacked a sufficient legal relationship without examination on other grounds). The breadth of case law in New Jersey dictates that the application of common law indemnification is context-sensitive and the absence of a special legal relationship is not necessarily dispositive.

[10] It does not matter that the party seeking indemnity was actively or passively negligent. In either case, the party is precluded from indemnification. *Adler*, 32 N.J. at 55 ("We reject any rule which would attempt to determine whether the negligence of the party seeking indemnity was active or passive . . . .").

7

Therefore, in order to maintain a claim for implied indemnification, the Third-Party Plaintiffs must establish the existence of a special relationship. "It is the existence of a special legal relationship sufficient to impose certain duties and a subsequent breach of those duties that permits an implied indemnification." *Ruvolo*, 133 N.J. Super. at 367. Much of the case law requiring a special relationship or independent duty concerns employer liability under the Workers' Compensation Act. *See Ramos*, 103 N.J. at 189; *See also Ruvolo*, 133 N.J. Super. at 368 (breach of an independent duty owed by the employer to the third party will create a claim for implied indemnity) (citing *Ryan v. Pan-Atlantic*, 350 U.S. 124, 130-31 (1955)). This line of cases requires a special relationship inasmuch as the Legislature has acted to restrict an employer's liability through the Compensation Act. *Ramos*, 103 N.J. at 189. Still, the doctrine has been applied elsewhere. *See Poltrock v. NJ Auto. Accounts Mgmt. Co., Inc.*, Civil Action No. 3:08-cv-1999-FLW, 2008 U.S. Dist. Lexis 103351 at *28 (D.N.J. December 22, 2008); *Hagen v. Koerner*, 64 N.J. Super. 580, 584 (N.J. Super. Ct. App. Div. 1960) (finding that common law indemnification arises in legal relationships such as the employee-employer or agency context). Though the case law is not exhaustive, examples of special relationships are: principal-agent, employer-employee, lessor-lessee, and bailor-bailee. *Ramos*, 103 N.J. at 189; *See also Hagen*, 64 N.J. Super. at 586-87; *Ruvolo*, 133 N.J. Super. at 584; *Cartel Capital*, 81 N.J. at 565.

Here, the Third-Party Plaintiffs have not satisfied either prong of the special relationship doctrine. First, the Third-Party Plaintiffs failed to allege that they share a special relationship with the Third-Party Defendants nor can one be inferred by the Court under the circumstances. Second, as previously discussed, the Third-Party Plaintiffs have not shown that their potential liability to the Association would be vicarious, thus failing the second prong. In fact, to establish their implied indemnification claim, the Third-Party Plaintiffs rely *solely* on arguments concerning their alleged vicarious liability. However, since the Third-Party Plaintiffs must be found culpable to incur liability under the Association's complaint, their liability would be primary and not vicarious. Thus, the Third-Party Plaintiffs are not entitled to implied indemnification.

## II.     Third-Party Plaintiffs' Claims for Contribution

The Third-Party Plaintiffs seek contribution under the New Jersey Joint Tortfeasor's Contribution Law ("JTCL") and the Comparative Negligence Act ("CNA"). They further allege that the Third-Party Defendants may be held personally liable under the law governing some of the Association's asserted claims, specifically, those claims predicated on violations of the Consumer Fraud Act ("CFA") and the Planned Real Estate Development Full Disclosure Act ("PREDFDA").

### A. New Jersey Joint Tortfeasor's Contribution Law

The JTCL allows for a right of contribution among jointly and severally liable tortfeasors that is not available under common law. N.J. Stat. § 2A:53A-1 to -5. It provides in relevant part,

> [w]here injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors, and the person so suffering injury or damage recovers a money judgment . . . against one or more of the joint tortfeasors . . . and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor . . . for the excess so paid over his pro rata share[.]

N.J. Stat. § 2A:53A-3.

The statute describes a "joint tortfeasor" to be, "[t]wo or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." N.J. Stat. § 2A:53A-1.

When establishing joint liability, "[i]t is common liability at the time of the accrual of [the] plaintiff's cause of action which is the sine qua non of [the] defendant's contribution right." *Markey v. Skog*, 129 N.J. Super. 192, 200 (N.J. Super. Ct. Law Div. 1974). Stated more succinctly, "the party seeking contribution [must] be liable for the same tort as the party from whom contribution is sought." *Cartel Capital*, 81 N.J. at 567. The burden of proving a party is a joint tortfeasor is on the party seeking contribution. The party seeking contribution "[c]annot prevail unless the injured person also [has] a cause of action for the tortious injury against the defendant called on for contribution." *Sattelberger v. Telep*, 14 N.J. 353, 367 (1954).

The Third-Party Defendants here are corporate officers of Tarragon and may be held personally liable in tort. "A director . . . of a corporation does not incur personal liability for its torts merely by reason of his official character, but a director . . . who directs the tortious act to be done, or participates or cooperates therein, is liable to third persons injured thereby, even though liability may also attach to the corporation for the tort." *Sensale v. Applikon Dyeing & Printing Corp.*, 12 N.J. Super. 171, 175 (N.J. Super. Ct. App. Div. 1951) (citing *Pennington Trap Rock Co. v. Pennington Quarry Co.*, 22 N.J. Misc. 318 (N.J. Sup. Ct. 1944)). Thus, for the Third-Party Defendants to be joint tortfeasors within the meaning of the JTCL, the Association must have a cause of action against them.

Here, the Third-Party Plaintiffs have not shown that the Third-Party Defendants committed any tortious acts. Rather, they assert that the Third-Party Defendants' positions within Tarragon and Tarragon Development Corporation render them personally responsible for the company's torts. Based on the allegations in the amended third-party complaint, which rely solely on the Third-Party Defendants' "official character," they are not 'joint tortfeasors' as defined in the JTCL. Thus, the Third-Party Plaintiffs may not seek contribution from the Third-Party Defendants.

### B. The Comparative Negligence Act

The CNA acts to modify the contribution scheme of the JTCL.[11] N.J. Stat. § 2A:15-5.1 *et seq*. Under the JTCL, joint tortfeasors can seek contribution for amounts paid in excess of their pro-rata share. The CNA acts to make the contribution scheme more equitable by requiring each party to be assigned a percentage of fault. *See Blazovic v. Andrich*, 124 N.J. 90, 105 (1991); *See also Cartel Capital*, 81 N.J. at 569. The statute provides that "[a]ny party who is so compelled to pay more than such party's percentage share may seek contribution from the other joint tortfeasors." N.J. Stat. § 2A:15-5.3.

The CNA is relevant only insofar as the JTCL applies. The term "joint tortfeasor" in the CNA "should be construed in light of the definition provided in the [JTCL]. . . ." *Arcell*, 152 N.J. Super at 485. Thus, if the Third-Party Defendants do not fall within the definition under the JTCL, the CNA is inapplicable.

### C. Personal Liability under the Consumer Fraud Act and the Planned Real Estate Development Full Disclosure Act

The CFA was enacted to combat deceptive and unconscionable practices that victimized consumers. *See Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (1994). The law states that "[t]he act, use or employment by any *person* of any unconscionable commercial practice . . . is declared to be an unlawful practice." N.J. Stat. § 56:8-2 (emphasis added). Under the Act, a "person" includes,

> any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestuis que trustent thereof.

N.J. Stat. § 56:8-1(d).

To violate the CFA, a "person" must commit an "unlawful [act]" as defined in the statute. *Cox*, 138 N.J. at 17. The CFA "sets forth three general categories of unlawful acts: (1) affirmative acts; (2) knowing omissions; and (3) regulatory violations." *Bosland v. Warnock Dodge, Inc.*, 396 N.J. Super. 267, 272 (N.J. Super. Ct. App. Div. 2007) (citing *Cox*, 138 N.J. at 17). As remedial legislation, the Act is to be construed liberally in favor of consumers. *Cox*, 138 N.J. at 15 (citing *Barry v. Arrow Pontiac, Inc.*, 100 N.J. 57, 69 (1985)). Individuals who "directly participated in the conduct giving rise to CFA liability" have been held liable under the Act. *Allen v. V & A Brothers, Inc.*, No. A-4427-08T1, 2010 N.J. Super. Lexis 109 *6 (N.J. Super. Ct. App. Div. Jun. 23, 2010) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 608-610 (1997)). Further, courts have not found it necessary to pierce the corporate veil in order to reach corporate principals and employees who violate the CFA. *Id*. at *8; *See also Kugler v. Koscot Interplanetary, Inc.*, 120 N.J. Super. 216, *255-256 (N.J. Super. Ct. Ch. Div. 1972).

---

[11] The CNA also disposed of the common law rule barring recovery by a plaintiff who was contributorily negligent. Subject to some exceptions, the Act allows for a negligent plaintiff to recover that percentage of his or her award which is in excess of the fault apportioned to the plaintiff. N.J. Stat. § 2A:15-5.1 *et seq*.

It is well settled that "[c]orporate officers are liable for their torts, although committed when acting officially." *Kugler*, 120 N.J. Super. at *256 (citing 3 *Fletcher Cyclopedia of Corporations* (Perm Ed.), §§ 1135, pp. 778). Typically, the 'participation theory' provides the basis for actions against those officers. The participation theory allows for liability when the officer is "sufficiently involved in the commission of the tort." *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 303 (2002). In the CFA context, "proof of personal participation by an individual in [the]. . . regulatory violation. . ." is needed. *Allen* at *12. An officer who personally makes or even sanctions behaviors that violate the Act may be found liable under the theory. *See Kugler*, 120 N.J. Super. at *257.

In the instant matter, the Third-Party Defendants are potentially liable for violations of the CFA. They fall within the definition of 'persons' under the statute. However, their liability is not automatic. They must also have committed an 'unlawful practice' as defined by the CFA and participated in the violative behavior. As determined in *Kugler*, that participation may consist of personal misdeeds or the sanctioning of such. *Id.* Potential liability notwithstanding, to proceed with an action predicated on a violation of the CFA, the Third-Party Plaintiffs must meet the particularity standard of Federal Rule of Civil Procedure 9(b). Fed. R. Civ. Pro. 9(b); *See Hoffman v. Hampshire Labs, Inc.*, 405 N.J. Super. 105, 114-115 (N.J. Super. Ct. App. Div. 2009) (applying state rules of civil procedure to a CFA claim). The Third-Party Plaintiffs here have not met that standard in their pleading.

Like the CFA, the PREDFDA is "consumer-oriented" and "remedial in nature." *Tung v. Briant Park Homes, Inc.*, 287 N.J. Super. 232, 237 (N.J. Super. Ct. App. Div. 1996). The PREDFDA explicitly provides for personal liability of corporate officers. N.J. Stat. § 45:22A-37(c). The statute states,

> [e]very person who directly or indirectly controls a development or developer liable under subsection a., every general partner, officer, or director of a developer, and every person occupying a similar status or performing a similar function, shall also be liable jointly and severally with and to the same extent as such developer, unless the person otherwise liable sustains the burden of proof that he did not know and in the exercise of reasonable care could not have known of the existence of the facts by reason of which the liability is alleged to exist. There is a right to contribution as in cases of contract among persons so liable.

N.J. Stat. § 45:22A-37(c).

As such, the Third-Party Plaintiffs need not resort to the participation theory to prove personal liability. Instead, the statute imputes liability to an officer upon a finding that the Act was violated. Additionally, the statute provides for contribution among parties to a contract when liability is imposed. The Third-Party Defendants clearly occupied positions with Tarragon that place them within the purview of N.J.S.A. 45:22A-37(c). Thus, to the extent that the Association successfully proves a violation of PREDFDA, the Third-Party Defendants may be

11

subject to personal liability and claims for contribution under that Act. At this time, however, the Third-Party Plaintiffs, as with the CFA claim, have not met the pleading standard for such a claim.

### III. Failure to State a Claim Pursuant to Rule 12(b)(6)

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim can be made in an adversary proceeding pursuant to Bankruptcy Rule 7012. Fed. R. Bankr. P. 7012; Fed. R. Civ. P. 12(b)(6). Under Federal Rule of Civil Procedure 8, pleadings require "only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic v. Twombley*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *In re Rockefeller Ctr. Props. Secs. Litig.*, 311 F.3d 198, 215-216 (3d Cir. 2002).

Still, mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombley*, 550 U.S. at 555. Thus, Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombley*, 550 U.S. at 555 n.3. *Twombley* explicitly retired the 'no set of facts' doctrine laid out in *Conley*.[12] *Id.* at 563. "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombley*, 550 U.S. at 556).

Here, the Third-Party Plaintiffs' third-party complaint and amended third-party complaint attempt to succeed without providing a factual basis for their claims. They neither show a plausible claim nor provide grounds on which their claims are based. Specifically, they have failed to show a basis for express indemnification or a special relationship and vicarious liability necessary for common law indemnification. In addition, they have not adequately pled a claim for contribution under the JTCL and CNA. The facts alleged do not necessarily foster a belief that discovery will unearth evidence pertinent to the Third-Party Plaintiffs' claims. The pleadings are equally deficient to the extent they are rooted in the CFA. The pleading requirement of Federal Rule of Civil Procedure 9(b) is applicable to claims of fraud under the CFA.[13] *Campor, Inc. v. Brulant, LLC*, No. 09-5465, 2010 U.S. Dist. Lexis 32189 (D.N.J. Apr. 1, 2010) (citing *FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994)). The Third-Party Plaintiffs have not sufficiently alleged facts to allow the Court to conclude the Third-Party Defendants should be held personally liable under the CFA or the PREDFDA. *Hoffman*, 405 N.J. Super. at 114-115. Thus, the Third-Party Plaintiffs have failed to meet the required threshold for pleading.

---

[12] In *Conley*, the Court found dismissal appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.

[13] Federal Rule of Civil Procedure 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Pro. 9(b).

## **CONCLUSION**

For the reasons discussed above, the Third-Party Plaintiffs are not entitled to express or implied indemnification from the Third-Party Defendants.  Also, the Third-Party Plaintiffs may not seek contribution under the JTCL and the CNA.  Further, even though the Third-Party Defendants can be held personally liable under the CFA and the PREDFDA, a claim brought under these Acts must be plead with particularity under Rule 9(b).  The Third-Party Plaintiffs have failed to meet the pleading standard needed to continue with their claim under the CFA or the PREDFDA.  Accordingly, the motion to dismiss the cross-claims against the Third-Party Defendants is granted except that, in the interest of justice, the Third-Party Plaintiffs shall be granted the opportunity to file an amended complaint to meet the pleading deficiencies stated herein.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached hereto.

*s/    Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: October 1, 2010