**UNITED STATES BANKRUPTCY COURT**
DISTRICT OF NEW JERSEY
M.L. KING, JR.  FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH                                              (973) 645-4693
   BANKRUPTCY JUDGE                                          Fax: (973) 645-2606

**NOT FOR PUBLICATION**

┌─────────────────────────────┐
│                             │
│          **FILED**          │
│   JAMES J. WALDRON, CLERK   │
│                             │
│      **MAR. 18, 2011**      │
│                             │
│     U.S. BANKRUPTCY COURT   │
│          NEWARK, N.J.       │
│                             │
│ BY: s/ Ronnie Plasner, DEPUTY │
└─────────────────────────────┘

March 18, 2011

**LETTER OPINION**
**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Wollmuth Maher & Deutsch, LLP            Connell Foley, LLP
Paul R. DeFilippo, Esq.                  Liza M. Walsh, Esq.
500 Fifth Avenue, 12th Floor             Tricia B. O'Reilly, Esq.
New York, New York 10110                 Rukhsanah L. Lighari, Esq.
*Counsel for Third-Party Plaintiffs*     85 Livingston Avenue
                                         Roseland, New Jersey 07068
                                         *Counsel for Third-Party Defendants*

Re:    **Tarragon Corporation, et al., Debtors**
       **Case No. 09-10555 (DHS) (Jointly Administered)**
       **1200 Grand Street Condominium Association v. Tarragon Corporation, et al.  and**
       **Ursa Development Group, LLC, Mark Settembre, and Michael Sciarra v. William**
       **S. Friedman, Robert Rohdie, Robert P. Rothenberg, and Todd M. Schefler**
       **Adv. Pro. No. 09-01465 (DHS)**

Dear Counsel:

       For determination is a motion filed by Third-Party Defendants William S. Friedman,
Robert Rohdie, Robert P. Rothenberg, and Todd M. Schefler ("Third-Party Defendants") seeking
to strike and dismiss Counts I and II of the Second Amended Third-Party Complaint ("Ursa
Complaint") of Ursa Development Group, LLC, Mark Settembre, and Michael Sciarra ("Third-
Party Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this

Page 2
March 18, 2011

proceeding by Federal Rule of Bankruptcy Procedure 7012(b).  The Third-Party Plaintiffs filed the Second Amended Third-Party Complaint in response to an Opinion and Order of this Court dated October 1, 2010 ("October 1st Opinion"), which granted leave to amend claims against the Third-Party Defendants.

Specifically, the Third-Party Plaintiffs seek contribution and indemnification from the Third-Party Defendants for claims asserted against them by 1200 Grand Street Condominium Association ("Association") in its First Amended Complaint ("Association's Complaint") based on the construction of the 1200 Grand Street Condominium ("Condominium").  The Second Amended Third-Party Complaint also seeks contribution and indemnification for claims asserted in two related actions, known as the Skolnick and Abramson actions.  These actions have been consolidated with the Association action (collectively "Plaintiffs").

The Plaintiffs' relevant claims are predicated on violations of the New Jersey Consumer Fraud Act ("CFA"), the New Jersey Planned Real Estate Development Full Disclosure Act ("PREDFDA"), and common law fraud and negligence.  The Third-Party Plaintiffs' contribution claim is predicated on the PREDFDA, the CFA, the New Jersey Joint Tortfeasor's Contribution Law ("JTCL"), and the New Jersey Comparative Negligence Act ("CNA").

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984.  Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).  The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

### FACTS AND PROCEDURAL HISTORY

The following statement of facts and procedural history is abbreviated, as the parties are intimately familiar with the proceedings and the underlying facts at this point in the litigation.[1] The factual record has not changed, with the exception of the amended allegations contained in the Second Amended Third-Party Complaint, since the Court issued the October 1st Opinion.

The construction and marketing of the 1200 Grand Street Condominium resulted in litigation in the state court.  The Condominium was jointly developed by the Tarragon entities and Ursa Development Group, LLC.  In December 2008, as a result of alleged misrepresentations in the Public Offering Statement ("POS") and the Subscription and Purchase Agreement, as well as alleged defects in design, construction, maintenance, and repairs of the Condominium, the Association filed the First Amended Complaint in state court, naming the

---

[1] The Court directs both parties to its September 27th Opinion, 2010 WL 3921996 (Bankr. D.N.J. Sept. 27, 2010) ("Sept. 27th Opinion"), and its October 1st Opinion, 2010 WL 3928496 (Bankr. D.N.J. Oct. 1, 2010) ("Oct. 1st Opinion"), for a complete statement of the facts and procedural history in this case.

Page 3
March 18, 2011

Third-Party Plaintiffs, as well as the Tarragon entities, as defendants.  Thereafter, the Third-Party Plaintiffs filed an Answer and Third-Party Complaint seeking to hold the Third-Party Defendants, as individual managers of the Tarragon entities, responsible for any liability incurred as a result of the Association's action.  The case was subsequently removed to this Court in March 2009, following the Tarragon bankruptcy filing.

Prior to the Association's action, the individual owners of the Condominium units commenced two separate state court actions, known within this proceeding as the Skolnick and Abramson actions, against largely the same defendants appearing here.[2]  Those actions were also removed to this Court, in June 2009.  The Court subsequently ordered consolidation of the Skolnick and Abramson actions with the Association's action.

**DISCUSSION**

**I.      Motion to Strike**

In the October 1st Order and Opinion, the Court granted the Third-Party Plaintiffs leave to amend their claims for contribution and indemnity that were based on allegations in the Association's Complaint.  The Third-Party Defendants now move to strike the amended claims to the extent that they are based on the Skolnick and Abramson Complaints.  (Third-Party Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss, at 16) ("Third-Party Pl.'s Memo.")  Although motions to strike pursuant to Federal Rule of Civil Procedure 12(f) are "generally viewed with disfavor and should be used sparingly," *U.F.C.W. Local 56 Health & Welfare Fund v. J.D.'s Mkt.*, 240 F.R.D. 149, 154 (D.N.J. 2007), courts have discretion to reject and dismiss an amended complaint that exceeds the allowed scope.  *Campbell v. U.S.*, 375 Fed. App'x 254, 260 (3d Cir. 2010); *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.,* 473 F.3d 506, 524 (3d Cir. 2007).

Here, the Second Amended Third-Party Complaint asserts claims for contribution and indemnification that are based on underlying claims in the Skolnick and Abramson Complaints.  The underlying Skolnick and Abramson claims did not appear in the original Third-Party Complaint.  This Court dismissed some of these underlying claims as to Friedman and Rohdie in its September 27th Opinion.[3]  Furthermore, Schefler was dismissed from those actions by way of stipulation.  (Third-Party Def.'s Br. in Supp. of Mot. to Dismiss, at 19) ("Third-Party Def.'s Br.") As to Rothenberg, the Court agrees with the Third-Party Defendants that any claim against him would fail for the same reasons the Skolnick and Abramson claims failed against Friedman and Rohdie.  (*see Id.*)

---

[2]  *See*  Adv. Proc. 09-02012 (DHS); (Third-Party Def.'s Br., p. 19, n. 10).

[3] The Court dismissed the common law fraud and CFA claims based on the parol evidence rule. (Sept. 27th Opinion, p. 11) (relying on *Filmlife, Inc. v. Mal "Z" Ena, Inc,* 251 N.J. Super. 570 (App. Div. 1991) to hold that "if the plaintiffs cannot introduce extrinsic evidence to contradict the express terms of the [contract], they are also precluded from proving the claimed unconscionable commercial practice [required under the CFA].").

Page 4
March 18, 2011

The Court is within its discretion to strike all claims that are not based on the Association's Complaint because they exceed the scope of the October 1st Order. Despite the consolidation of the Skolnick and Abramson actions with the Association's action, by Order of this Court, the suits did not merge into a single action or "make those who are parties in one suit parties in another." (*Id.* at 17, n. 8) The October 1st Opinion was limited to contribution based solely on the Association's claims and the Third-Party Plaintiffs neither sought reconsideration of the Court's Order nor leave to add claims based on the Skolnick and Abramson motions. However, due to the procedural complexity of the case and because the motion to strike would be rendered moot as a result of this Court granting the motion to dismiss many of the claims on independent grounds, the Court will refrain from ruling on this issue.

## II.     Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief may be granted. Federal Rule of Civil Procedure 8 provides that pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Upon considering a 12(b)(6) motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). The factual allegations contained in the complaint "must be enough to raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Furthermore, "[t]he allegations of the complaint should 'plausibly suggest' the pleader is entitled to relief." *Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315, 321 (3d Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1966). The Supreme Court clarified the "plausibility" standard in *Ashcroft v. Iqbal* by holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation omitted). "The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.*

Pursuant to Bankruptcy Rule 7009, a 12(b)(6) motion to dismiss may be predicated upon a plaintiff's failure to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which provides that:

> [i]n alleging fraud or mistake, a party must state with particularity
> the circumstances constituting fraud or mistake. Malice, intent,

Page 5
March 18, 2011

> knowledge, and other condition of a person's mind may be alleged
> generally.

*Fed. R. Civ. P. 9(b).*  The heightened pleading requirement serves "to provide notice, not to test the factual allegations of the claim." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 n.2 (3d. Cir. 2003).  The requirement is generally deemed satisfied by allegations of date, place, time, and manner, or by "alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); *In re Rockefeller Ctr. Props. Secs. Litg.,* 311 F.3d 198, 217 (3d Cir. 2002) (answering the "who, what, when, where and how" questions will satisfy the 9(b) requirement).

Rigid application of Rule 9(b) prior to discovery, however, has the potential to "permit sophisticated defrauders to successfully conceal the details of their fraud." *In re Craftmatic Secs. Litg.*, 890 F.2d 628, 645 (3d Cir. 1989) (quoting *Christidis v First Penn. Mortgage Trust*, 717 F.2d. 96, 99-100 (3d Cir. 1983).  Thus, courts may apply the Rule with some flexibility, especially where "factual information is peculiarly within [a] defendant's knowledge or control." *In re Norvergence*, 424 B.R. 663, 688 (Bankr. D.N.J. 2010) (quoting *Saporito v. Combustion Eng'g, Inc.* 843 F.2d 666, 674-75 (3d Cir. 1988), *vacated on other grounds by Combustion Eng'g, Inc. v. Saporito,* 489 U.S.1049, 109 S. Ct. 1306, 103 L. Ed. 2d 576 (1989).  Bankruptcy courts, in particular, will often interpret Rule 9(b) "liberally."  *Id.*  (citing *In re MacGregor Sporting Goods, Inc.*, 199 B.R. 502 (Bankr. D.N.J. 1995) (citation omitted).  Nevertheless, the Rule does not permit plaintiffs to "merely lump multiple defendants together but requires [the complaint to] . . . inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.*

## III.    Contribution

As noted, the Third-Party Plaintiffs seek contribution under the JCTL and the CNA.  A party seeking contribution must show that the party actually injured by the alleged tort has a cause of action against the party from whom contribution is sought.  *Sattelberger v. Telep*, 14 N.J. 353, 367 (1954).  The Order accompanying the October 1st Opinion allowed the Third-Party Plaintiffs to amend their complaint, specifically with respect to the heightened pleading requirement of Federal Rule of Civil Procedure 9(b).

The Court will consider the amended common law fraud, CFA, and PREDFDA claims in turn.

### A.    The Common Law Claims

The Second Amended Third-Party Complaint does not allege tortious conduct sufficient to state a valid cause of action for common law fraud or negligence.  Accordingly, there is no

Page 6
March 18, 2011

alleged conduct that would place the Third-Party Plaintiffs within the JTCL.  The Court noted
this fact in the October 1st Opinion, when it stated:

> "Third-Party Plaintiffs have not shown that the Third-Party
> Defendants committed any tortious acts.  Rather, . . . [they] rely
> solely on the Third-Party Defendants' [positions as corporate
> officers and directors].  [Therefore], they are not 'joint tortfeasors'
> as defined by the JCTL . . . [and] may not seek contribution . . . "

The Second Amended Complaint does not remedy the deficiency as to the common law
claims.  The Court is sympathetic to the fact that the Third-Party Plaintiffs must, to some degree,
rely on the Plaintiffs' pleadings.  A third-party plaintiff seeking contribution is not required to
prove the case against itself.  However it must show that the plaintiff possesses a valid cause of
action.  *Sattelberger,* 14 N.J. at 367.  In this regard, the Court notes that it dismissed the common
law fraud claims relating to the purported loss of tax savings in the Skolnick and Abramson
actions because those claims could not survive application of the parol evidence rule.  *See, infra,
part I* and *n.3*.  The Association's Complaint does not even state a claim for common law fraud.

The negligence claims were dismissed in the Skolnick and Abramson actions because the
complaint was lacking in factual support for the allegations.  (Sept. 27th Opinion, at 13) The
same negligence claims in the Association's Complaint are even more conclusory.  Therefore,
the Court finds that the Third-Party Plaintiffs' pleading does not satisfy the "plausibility"
standard as enunciated in *Twombly* and *Iqbal*.  Insofar as the Third-Party Plaintiffs seek
contribution for "common law fraud . . . and other actionable conduct," in Count II of the Second
Amended Third-Party Complaint, the claim is dismissed with prejudice.

### B.      The CFA Claims

A cause of action under the CFA has three elements: (1) a defendant committed unlawful
conduct; (2) a plaintiff suffered an ascertainable loss; and (3) a causal nexus exists between the
unlawful conduct and the loss.  *New Jersey Citizen Action v. Schering*, 367 N.J. Super. 8, 12-13
(App. Div. 2003).  The unlawful conduct may take the form of: (1) an affirmative act; (2) a
knowing omission; or (3) a violation of specific regulations promulgated under the CFA.  *Allen v.
V and A Bros., Inc.*, 414 N.J. Super. 152, 156 (App. Div. 2010), *cert. granted*, 204 N.J. 40 (N.J.
Oct. 21, 2010) (No. A-004427-08) (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17-19, 647
A.2d 454 (1994)).  When the allegation consists of an affirmative act, the plaintiff need not prove
intent.  *Id; Viking Yacht Co. v. Composite One LLC,* 2010 U.S. App. LEXIS 13483, at *9 (3d
Cir. N.J. July 1, 2010).  Individuals who were principals or employees of corporations sued
under the CFA may be held personally liable if they "directly participated" in the unlawful
conduct.  *Allen,* 414 N.J. Super. at 156.  Such individuals are "persons" as contemplated by the
CFA in its liability provisions.  N.J. Stat. Ann. §§ 56:8-1(d) and 56:8-2; *see also Id.*

Page 7
March 18, 2011


In the present case, the alleged unlawful conduct in the Association's Complaint is described as "unconscionable commercial practice and/or fraud." (Pl.'s First Am. Compl., ¶ 59) Under the CFA, "unconscionability" "implies [a] lack of good faith, honesty in fact and observance of fair dealing." *In re Norvergence*, 424 B.R. at 692. (citations omitted). "Unconscionability is to be interpreted liberally in order 'to effectuate the public purpose of the CFA.'" *Id.* (citations omitted); *see also Allen,* 414 N.J. Super. at 156 ("The Court has directed that the CFA, as remedial legislation, be construed liberally in favor of consumers.") (citing *Cox*, 138 N.J. at 15). Fraudulent conduct under the CFA is subject to the heightened standard of Rule 9(b). Where the unconscionability claim is pled concurrently with the fraud claim, as in the Association's Complaint, (Pl.'s First Am. Compl., ¶ 59), Rule 9(b) applies to all CFA claims. *See In re Norvergence*, 424 B.R. at 692-94 (citing *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494 (D.N.J. 1999); *Zebersky v. Bed, Bath & Beyond, Inc.*, 2006 U.S. Dist. LEXIS 86451 (D.N.J. Sept. 25, 2006); *Szcubelek v. Cendant Mortgage Corp.*, 2001 U.S. Dist. LEXIS 26110 (D.N.J. June 15, 2001) and *FDIC v. Bathgate*, 1993 U.S. Dist. LEXIS 20293 (D.N.J. July 19, 1993), *aff'd* 27 F.3d 850 (3d Cir. 1994)).


Specifically, the Third-Party Plaintiffs assert that the unlawful affirmative conduct consisted of drafting and signing the Public Offering Statement ("POS"), which contained material misrepresentations as to several aspects of the development, including common elements. (Third-Party Pl.'s Mem., at 14). The misrepresentations allegedly caused an ascertainable loss to the Association in the form of: "costs incurred for repairing the defective components, loss of vital building services, engineering, legal and additional expenses," (Association Compl., ¶ 28) and "costs incurred for repairing damage to units and common elements." (Id. at ¶ 35) The Association, as "a representative body that acts on behalf of the unit owners," *Fox v. Kings Grant Maintenance Ass'n*, 167 N.J. 208, 218, 770 A.2d 707 (2001), has standing to "assert tort claims concerning the common elements and facilities of the development as if the claims were asserted directly by the unit owners individually." *Zephyr Lofts Condo. Asss'n v. Henderson Lofts Renewal, LLC,* 2009 WL 3416051, *3 (N.J. Super. App. Div. Oct. 13, 2009) (citing N.J. Stat. Ann. § 46:8B-16(a)).


In *News America Mktg. In-Store Svcs., LLC v. Anidjar et al.,* 2010 U.S. Dist. LEXIS 80242 (D.N.J. Aug. 4, 2010), the district court considered a motion to dismiss the plaintiffs' fraud and breach of contract claims against the defendant and its corporate officers. The parties entered into an Asset Purchase Agreement ("APA") and a separate Goodwill Purchase Agreement ("GPA"). *News America,* 2010 U.S. Dist. Lexis 80242 at *2. The court denied the motion to dismiss as to the fraud claim against the defendant's chief executive officer, president, and chairman of the board ("CEO"). *Id.* at *15. The court found that because the CEO allegedly "executed and delivered an Officer's Certificate at the closing, in which he falsely certified that the representations and warranties in the [APA] were true," the plaintiffs had pled a valid cause of action. *Id.* at *14-15. The court noted that the complaint did not seek to hold the CEO individually liable for the corporation's contractual obligations under the APA, but rather sought

Page 8
March 18, 2011

to hold him "liable for his own allegedly fraudulent statements contained in the Officer's Certificate." *Id.* at \*15.

In contrast, the *News America* court dismissed fraud claims against three other corporate officers. *Id.* at \*16. Here, the court based its holding on the fact that "the complaint merely allege[d] that [the individual officers] 'assisted in the preparation of transactional documents." *Id.* The plaintiff's complaint failed to set forth any facts other than those asserted "upon information and belief," which the court determined were not enough to survive the 12(b)(6) motion, even considering the Third Circuit's "flexible Rule 9(b) application" in cases of corporate fraud. *Id.* Accordingly, the district court dismissed the claims without prejudice pursuant to Rule 9(b). *Id.* at \*17.

Here, the Court is presented with a similar fact pattern. The Third-Party Defendants are corporate officers and directors of the Tarragon entities and the Third-Party Plaintiffs are alleging misrepresentations in the POS. In considering the amended contribution claims pursuant to CFA liability, the Court will look at the allegations against each of the Third-Party Defendants to determine whether the "who, what, when, where and how" questions are satisfied as required by Rule 9(b). *In re Rockefeller Ctr.,* 311 F.3d at 217.

### 1.      Robert Rohdie

Rohdie was the President and Chief Executive Officer of Tarragon Development Corporation, a wholly owned subsidiary of Tarragon Corporation ("Tarragon"), as well as a member of Tarragon's Board of Directors. (Second Amend. Third-Party Compl., ¶ 18) The Second Amended Third-Party Complaint alleges that Rohdie "drafted" and "negotiated" the terms of the POS. (*Id.* at ¶ 40) Additionally, Rohdie signed the POS certifying that "statements and representations contained herein are true and accurate." (*Id.* at ¶ 33) The Third-Party Plaintiffs' Complaint, although not alleging exact dates, times, or places, nevertheless provides an "alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud," *see Seville,* 742 F.2d at 791, by way of describing Rohdie's specific and direct role in the allegedly unlawful conduct under the CFA. Therefore, the Court finds the particularity requirement of Rule 9(b) is satisfied and will deny the motion to dismiss Count II of the Second Amended Third-Party Complaint, insofar as it seeks contribution for the underlying CFA claims as to Rohdie.

### 2.      William S. Friedman and Robert P. Rothenberg

Friedman was the Chief Executive Officer, Director, and Chairman of the Board of Directors of Tarragon. (*Id.* at ¶ 20) Rothenberg was the President and Chief Operating Officer of Tarragon, as well as a member of Tarragon's Board of Directors. (*Id.* at ¶ 17) If the present allegations were based solely on supervision, sanction, corporate control, or "assistance," the claims would fail for the reasons stated in *News America*.

Page 9
March 18, 2011

In contrast**,** however, the present allegations point to a specific document, the POS, as opposed to the more general "transactional documents" alleged by the plaintiff in *News America*. Furthermore, the present complaint alleges that Friedman and Rothenberg "drafted" and "negotiated" the POS, (*Id.* at ¶¶ 38-39) as opposed to merely assisting in the preparation. Reading these allegations in the light most favorable to the plaintiffs, the allegations point to "direct participation" in unlawful conduct under the CFA and satisfy the particularity requirements of Rule 9(b). Accordingly, the Court will deny the motion to dismiss Count II of the Second Amended Third-Party Complaint, insofar as it seeks contribution for the underlying CFA claims as to Friedman and Rothenberg.

### 3.  Todd M. Schefler

Schefler was, at various times, the Executive Vice President of Tarragon and Tarragon Development Corp., as well as President of Tarragon Development Corp. (*Id.* at ¶ 19) The allegations against Schefler mirror those against Friedman and Rohdie. (*Id.* at ¶ 41) Schefler, however, has averred to the Court that he did not have any involvement with the Condominium project after August 2003. (Third-Party Def.'s Br., at 29) In addition, Schefler was dismissed from the Skolnick and Abramson actions. (*Id*. at 19).

In considering a motion to dismiss, however, the Court is required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips,* 515 F.3d at 233. The Association's Complaint does not identify a specific date relating to the allegations. The POS was not issued until June 3, 2004, approximately ten months after Schefler's involvement allegedly ceased.   (Third-Party Def.'s Br., at 29) Nevertheless, the Third-Party Plaintiffs allege that Schefler was directly involved in drafting the POS. At this stage, without the benefit of discovery, the Court agrees that it is at least plausible for Schefler to have participated in drafting the POS during his tenure with Tarragon. Accordingly, the Court will deny the motion to dismiss Count II of the Second Amended Third-Party Complaint, insofar as it seeks contribution for the underlying CFA claims as to Schefler.

### C.      The PREDFDA Claims

The New Jersey PREDFDA expressly provides for personal liability when a corporate officer, or any other "person," "directly or indirectly" controls the developer. N.J. Stat. Ann. § 45:22A-37(c). Such persons are "jointly and severally liable with and to the same extent as the developer" and the PREDFDA expressly provides a right to contribution. *Id.* The Association's Complaint alleges that various misstatements, omissions, and misrepresentations in the POS as to the Condominium's common elements caused the Association to sustain monetary losses. (Association Compl., at ¶ 25) Regulations implementing the PREDFDA, *see* N.J.A.C. § 5:26-7.2(c), as well as the POS itself, state that the developer owed the Association a duty to assure

Page 10
March 18, 2011

that the common elements were in compliance with all governmental standards, codes, and regulations.  (Association Compl., at ¶ 26)

The Third-Party Defendants argue that the amended third-party claims for contribution pursuant to the underlying PREDFDA claims are deficient for three reasons: (1) the PREDFDA claims are not pled with particularity; (2) the Third-Party Defendants did not directly or indirectly control the developer; and (3) the Third-Party Defendants were not motivated by their own financial interest in executing the POS.  (Third-Party Def.'s Br., at 24-25) (citing *Abrahamsen v. Laurel Gardens Ltd. P'ship.,* 276 N.J. Super. 199, 214 (Law Div. 1993)) (liability under *N.J.S.A. 45:22A-37(c)* "extends only to those who participate in the successful solicitation of a unit in a planned real estate development which was motivated at least in part by a desire to serve his or her own financial interest or those of the developer").

Although the pleadings appear to lack specific allegations of personal financial motivation on the part of the Third-Party Defendants, all four were officers and/or directors of Tarragon and its related entities.  The Tarragon entities were in the for-profit real estate development business.  The Court agrees with the Third-Party Plaintiffs that it is "ludicrous to contend that officers whose jobs were to further the profit making objectives of the company . . . would not be motivated to ensure that a major asset, the [Condominium], was built and sold for the greatest possible profit."  (Third-Party Pl.'s Letter in Further Opp'n, at 4)

The Third-Party Plaintiffs also suggest that Rule 9(b) does not apply to claims under the PREDFDA (Third-Party Pl.'s Memo., at 18)  (citing *Abrahamsen,* 276 N.J. Super. at 203).  The Court does not need to reach this question because it finds 9(b)'s particularity requirements are nevertheless met as to the PREDFDA contribution claims, for the same reasons stated above with respect to the CFA claims.  Accordingly, the Court will limit its review to the control issue.

In its October 1st Opinion, the Court stated that the Third-Party Defendants "clearly fall within the purview of the PREDFDA."   The parties disagree on the implications of this statement.  In *Abrahamsen*, the court considered the issue of controlling person liability and noted that the phrase "directly or indirectly" appearing in *N.J.S.A. 45:22A-37(c)* also appears in four other New Jersey statutes.  (*See, e.g.*, *N.J.S.A. 45:15-16.47(c)* (the Real Estate Sales Full Disclosure Act);  *N.J.S.A. 45:22A-16(c)* (the Retirement Community Full Disclosure Act); *N.J.S.A. 49:3-71(b)* (New Jersey's Blue Sky Law); *N.J.S.A. 49:5-15(c)* (the Corporation Takeover Bid Disclosure Act)).

In *In re Nat'l Century Fin. Enters., Inv. Litig.*, 504 F. Supp. 2d 287, 309-310 (S.D. Ohio 2007), a case interpreting the New Jersey Blue Sky Law, the district court noted that "New Jersey courts look to federal securities law to define controlling person liability." *See Abrams v. Ohio Cas. Ins. Co.*, 322 N.J. Super. 330, 337, 731 A.2d 48, 51-52 (N.J. Super. Ct. App. Div. 1999); *Zendell v. Newport Oil Corp.*, 226 N.J. Super. 431, 439-440, 544 A.2d 878, 882 (N.J. Super. Ct. 1988).  In the securities law context, the "overwhelming trend" in the Third Circuit is

Page 11
March 18, 2011

that the complaint does not need to "allege an actual exercise of control in order to survive a motion to dismiss." *See, e.g. Jones v. Intelli-Check, Inc*., 274 F. Supp. 2d 615, 645-646 (D.N.J. 2003); *Palladin Partners v. Gaon*, 2006 U.S. Dist. LEXIS 59844, 2006 WL 2460650, at \*16 (D.N.J. Aug. 22, 2006).

Accordingly, the *Abrahamsen* court held that the threshold question on the issue of controlling person liability under the PREDFDA is whether the defendant engaged in "minimal participation in the issuance of the public offering statement." *Abrahamsen,* 276 N.J. Super. at 214 (citing *Cola v. Terzano,* 129 N.J. Super. 47, 54 (Law Div. 1974)). The court held that while the mere act of lending money to a developer would not give rise to liability under the PREDFDA, *see Id.*, "common sense dictates that" being in the position as a lender raises the potential for control and participation sufficient to bring a lender within that Act. *See Id.* It can be inferred from this line of reasoning, specifically that a lender might fall within the purview of the PREDFDA where it exerts "actual or inferential management and promotion of development," *see Id.*, that the Third-Party Defendants, by virtue of their positions as officers and directors, and their alleged supervisory roles, would therefore fall within the "control" provisions as well.

For the reasons stated, the Court will deny the motion to dismiss Count II of the Second Amended Third-Party Complaint, insofar as it seeks contribution based on the underlying PREDFDA claims.

## IV.    Indemnification

As the Court noted in the October 1st Opinion, there is no basis for express indemnification in this case because the Third-Party Defendants were not parties to the development agreement between Tarragon and Ursa. A claim for common law or implied indemnification may arise, however, "without agreement, and by operation of law to prevent a result which is regarded as unjust or unsatisfactory." W. Keeton, D. Dobbs, R. Keeton, D. Owens, *Prosser & Keeton on the Law of Torts* § 51 at 341 (5th ed. 1984). "A person who, *without personal fault*, has become subject to tort liability for the unauthorized or wrongful conduct of another, is entitled to indemnity from the other . . ." *Cartel Capital Corp. v. Fireco of New Jersey,* 81 N.J. 548, 566 (1980) (quoting *Restatement, Restitution § 96 at 418 (1937))* (emphasis added). Accordingly, New Jersey courts have generally applied the doctrine of implied indemnification when there is (1) a "special relationship" between the parties, and (2) the party to be indemnified is entirely without fault. *See Adler's Quality Baker, Inc. v. Gaseteria Inc.,* 32 N.J. 55 (1960); *Cartel Capital Corp.,* 81 N.J. at 566; *Araps v. DeBaggis (In re DeBaggis),* 247 B.R. 383, 394 (Bankr. D.N.J. 1999).

Page 12
March 18, 2011

### A.    A "Special Relationship"

A party may be entitled to indemnity when it can "set forth a sufficient legal relationship between itself and the third-party defendant." *Poltrock v. N.J. Auto. Accounts Mgmt. Co.*, 2008 U.S. Dist. Lexis 103351 (D.N.J. Dec. 22, 2008).    "It is the existence of a special legal relationship sufficient to impose certain duties and a subsequent breach of those duties that permits an implied indemnification." *Ruvulo v. United States Steel Corp.*, 133 N.J. Super. 362, 367 (Law Div. 1975).    The most common examples of a "special relationship" are: principal-agent, employer-employee, lessor-lessee, and bailor-bailee. *Ramos v. Browning Ferris Indus. of South Jersey, Inc.*, 103 N.J. 177, 189 (1986).

The Third-Party Plaintiffs ask the Court to find that a special relationship existed between themselves and the Third-Party Defendants because "Ursa and Tarragon were joint venturers in a planned real estate development in New Jersey subject to [the PREDFDA and the CFA]." (Third-Party Pl.'s Mem. of Law, at 23)    The Third-Party Plaintiffs argue that the Third-Party Defendants, as individuals, controlled Tarragon. (*Id*.)    A person in "control" can be held liable under the PREDFDA, and therefore the Third-Party Plaintiffs assert that they were in a special relationship with the Third-Party Defendants insofar as they "owed a duty to Third-Party Plaintiffs to refrain from acting in a manner that would expose [Ursa and its principals] to liability."    (*Id*.)    The Court is not persuaded, however, that a special legal relationship for indemnification purposes exists between corporate joint venturers, much less between the respective corporate principals in their individual capacities.    Accordingly, the Court reaffirms its earlier finding that no special relationship exists between the Third-Party Plaintiffs and Third-Party Defendants.

### B.    "Purely" Vicarious Liability

In its October 1st Opinion, the Court noted that under New Jersey law, "the absence of a special legal relationship is not necessarily dispositive" on the issue of whether common law indemnity is available. *See also Ramos,* 103 N.J. at 189-90.    It must be noted, however, that the vast majority of case law *does* indicate that a special relationship between the parties is required when implied indemnification is being sought. *See, e.g., Dickinson v. Magargal*, 1993 U.S. Dist. LEXIS 13789, *4 (D.N.J. Sept. 28, 1993); *Poltrock v. N.J. Auto. Accounts Mgmt. Co.*, 2008 U.S. Dist. LEXIS 103351, *28 (D.N.J. Dec. 22, 2008); *Hagen v. Koerner,* 64 N.J. Super. 580, 584 (App. Div. 1960); *Ruvulo*, 133 N.J. Super. at 367; *Ramos,* 103 N.J. at 189.    In a pair of 2008 cases, the district court refused to recognize the availability of common law indemnification without a special relationship. *Aly v. Fed. Express, Inc.*, 2008 U.S. Dist. LEXIS 72319 (D.N.J. Sept. 22, 2008) ("The right to indemnification can be based on a contractual obligation or on the existence of a special legal relationship between the parties, in which case the obligation will be implied by operation of law."); *Poltrock,* 2008 U.S. Dist. LEXIS 103351 at *28 (D.N.J. Dec. 22, 2008) ("[A] duty to indemnify . . . arises where a party seeking indemnification can set forth a

Page 13
March 18, 2011

sufficient legal relationship between itself and the third-party defendant."). More recently, the state appellate court refused to recognize a claim for common law indemnity in the absence of a special relationship, despite a finding that the party to be indemnified was entirely free of fault. *Northern Int'l Remail & Express Co. v. Robbins*, 2010 N.J. Super. Unpub. LEXIS 2023 (App. Div. 2010)

Ultimately, it is clear New Jersey law indicates that the path to implied indemnification is much steeper without a special relationship. The Third-Party Plaintiffs argued before this Court that because the Association's Complaint alleges strict liability under the PREDFDA, any resulting liability is "purely" vicarious. Accordingly, the Third-Party Plaintiffs argue that they are entitled to implied indemnity.

Liability under the PREDFDA may appear strict and absolute. However, the present case is distinguishable from *Adler's* and *Ramos*. Unlike those cases, or unlike the products liability context, where the "pure" fault for placing a product with a dangerous latent defect into commerce lies with the manufacturer, the Third-Party Plaintiffs in this case bear some responsibility for the alleged tortious conduct. The Third-Party Plaintiffs are not entirely without fault because of their position as joint venturers and "controllers" of the Condominium project. As such, they had some level of responsibility to oversee the construction and marketing of the development.   Accordingly, the Court will grant the motion to dismiss as to Count I of the Second Amended Third-Party Complaint.

## CONCLUSION

For the reasons stated, the motion to dismiss will be granted as to Count I of the Second Amended Third-Party Complaint. Count I is hereby dismissed with prejudice for failure to state a claim upon which relief can be granted. As to Count II, the motion will be granted in part and denied in part. Count II, insofar as it seeks contribution for "common law fraud . . . and other actionable conduct" is hereby dismissed with prejudice for failure to state a claim upon which relief can be granted. The motion is denied as to the remainder of Count II, which seeks contribution based on the underlying CFA and PREDFDA claims.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

Very truly yours,

*s/ Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure