<u>**NOT FOR PUBLICATION**</u>



**FILED**
JAMES J. WALDRON, CLERK

**JAN. 10, 2012**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: <u>s/ Ronnie Plasner,</u> DEPUTY

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **In Re:**<br><br>**TARRAGON CORPORATION,** *et al.***,**<br>         Debtors. | Case No.:   09-10555 (DHS)<br><br>Judge:        Donald H. Steckroth, U.S.B.J. |
| **1200 GRAND STREET CONDOMINIUM ASSOCIATION,**<br>         Plaintiff,<br>v.<br>**TARRAGON CORPORATION,** *et al.***,**<br>         Defendants,<br>and<br>**URSA DEVELOPMENT GROUP, LLC, MARK SETTEMBRE, and MICHAEL SCIARRA,**<br>         Defendants/<br>         Third-Party Plaintiffs,<br>v.<br>**WILLIAM S. FRIEDMAN<br>AND ROBERT ROHDIE,**<br>         Third-Party Defendants. | Adv. Pro. No.:  09-01465 (DHS) |

**<u>OPINION</u>**

**APPEARANCES:**

**WOLLMUTH MAHER & DEUTSCH, LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue, 12th Floor
New York, New York 10110
*Counsel for Defendant/Third-Party Plaintiffs*

**LUM, DRASCO & POSITAN LLC**
Paul A. Sandars, III, Esq.
Kevin J. O'Connor, Esq.
Scott E. Reiser, Esq.
103 Eisenhower Parkway
Roseland, New Jersey 07068
*Counsel for Plaintiff 1200 Grand Street*
*Condominium Association*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Defendants Ursa Development Group, LLC ("Ursa"), Michael Sciarra ("Sciarra") and Mark Settembre ("Settembre") (collectively "Ursa Defendants" or "Defendants") have filed a motion seeking judgment on the pleadings for all Counts of the Second Amended Complaint of plaintiff 1200 Grand Street Condominium Association ("Plaintiff" or "Association") pursuant to Federal Rule of Civil Procedure 12(c), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b).  The Plaintiff filed the Second Amended Complaint in response to an Order of this Court dated October 31, 2011 ("October 31st Order"), granting leave to amend.

The Plaintiff alleges that the Ursa Defendants, as Sponsors of the development and sale of the condominium complex at 1200 Grand Street ("1200 Grand") and as members and sole shareholders of Ursa, planned, developed, solicited and transferred to buyers, units in 1200 Grand without disclosing known construction defects and other misrepresentations in contravention of state law and other agreements.  Specifically, the Plaintiff seeks damages and other equitable relief for injuries sustained, stemming from the alleged omissions and misrepresentations.  The Defendants counter that they are neither fiduciaries of the Plaintiff nor are they "developers" of 1200 Grand, but rather shareholders in a limited liability corporation, and as such, they owe no duty to the plaintiff and further are protected under limited liability.  Additionally, Defendants argue that the Plaintiff has failed to plead with the level of particularity required by Federal Rule of Civil Procedure 9(b), to support a claim for fraud.[1]

The Plaintiff's relevant claims are predicated on violations of the New Jersey Planned Real Estate Development Full Disclosure Act ("PREDFDA"), the New Jersey Consumer Fraud Act ("CFA"), negligence and a breach of fiduciary duties.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984.  Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).  The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

**FACTS AND PROCEDURAL HISTORY**

The following statement of facts and procedural history is abbreviated, as the parties are intimately familiar with the proceedings and the underlying facts at this point in the litigation.[2]

---

[1] As of the Second Amended Complaint, Plaintiff no longer alleges breach of subscription and purchase agreement, breach of the implied covenant of good faith and fair dealing in unit purchase agreements, or breach of the implied warranties in unit purchase agreements. The parties filed briefs in regards to this motion prior to the Court granting Plaintiff's motion seeking leave to file the Second Amended Complaint.  The Court, therefore, need not address the arguments raised in the parties' briefs in support and opposition of those claims.

[2] This Court directs both parties to its September 27th Opinion, 2010 WL 3921996 (Bankr. D.N.J. Sept. 27, 2010) ("Sept. 27th Opinion"), and its October 1st Opinion, 2010 WL 3928496 (Bankr. D.N.J. Oct. 1, 2010) ("Oct. 1st Opinion"), for a complete statement of the facts and procedural history in this case.

The factual record has not changed, with the exception of the amended allegations contained in the Second Amended Complaint, since the Court issued the Oct. 1st Opinion.

Individual unit owners of 1200 Grand, developed by 1200 Grand Street Renewal, LLC (1200 Grand Street Renewal), initiated adversary proceedings, known within this proceeding as the Skolnick and Abramson actions, in the state court alleging defects in the design, construction, maintenance and repair of the property, along with misrepresentations in the Public Offering Statement ("POS"). The claims were brought against the Ursa Defendants, along with Tarragon Corporation and other named defendants, for their alleged involvement in the construction and marketing of 1200 Grand.

In December of 2008, the Association, on behalf of unit owners, filed similar claims for damages stemming from the alleged negligence and misrepresentations related to defects in the common areas of 1200 Grand. In March of 2009, the action was removed to this Court, following the Tarragon bankruptcy proceeding. The Skolnick and Abramson actions were removed to this Court in June of 2009. The Court subsequently consolidated the actions.

Since that consolidation, claims have been asserted against third- and fourth-party defendants. The Association subsequently sought leave to file a Second Amended Complaint to assert claims against the third- and fourth-party defendants. The Ursa Defendants filed a brief in opposition to the Association's motion to amend and in support of their cross-motion to dismiss the complaints insofar as they seek damages and other relief from Ursa Defendants pursuant to rule 12(c) of the Federal Rules of Civil Procedure. In October of 2011, this Court granted the Association's motion to file a Second Amended Complaint over the Defendants' opposition, but reserved on the cross-motion to dismiss.

## DISCUSSION

**I.    Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c)**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Federal Rule of Civil Procedure 12(c) is applicable in adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012(b). *See* FED. R. BANKR. P. 7012(b). Where a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings alleges the plaintiff has failed to state a claim, the motion "is treated under the same standards as a Rule 12(b)(6) motion." *Huertas v. United States Dep't of Educ.*, 2009 U.S. Dist. LEXIS 89903, at *21 (D.N.J. Sept. 28, 2009) (citing *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991)).

Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief may be granted. Federal Rule of Civil Procedure 8 provides that pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Upon considering a 12(b)(6) motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading

4

of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Alleghany*, 515 F.3d 224, 233 (3d Cir. 2008) (citations and quotations omitted). The factual allegations contained in the complaint "must be enough to raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Furthermore, "[t]he allegations of the complaint . . . should 'plausibly suggest' the pleader is entitled to relief." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 557). The Supreme Court clarified the "plausibility" standard in *Ashcroft v. Iqbal* by holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.*

Still, mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3. Additionally, *Twombly* explicitly retired the 'no set of facts' doctrine laid out in *Conley*. *Id.* at 563.

## II.  Review is Limited to the Four Corners of the Complaint

Plaintiff, in its brief in opposition to Defendants' motion to dismiss the complaint, supports the sufficiency of its claims with facts from extraneous documents.[3] (Pl.'s Br. in Opp. of Mot. to Dismiss, at 11–23) ("Pl.'s Br.") Plaintiff would have the Court consider these facts in reviewing the pleadings and deciding whether to deny Defendants' 12(c) motion for judgment on the pleadings. For the following reasons, these documents will not be considered in measuring the sufficiency of the pleadings.

As a general matter, when ruling on a 12(c) motion, Federal Rule of Civil Procedure 12(d) prohibits the court from considering matters outside the pleadings, unless the court, after giving all parties reasonable time to present all pertinent material, treats the motion as one for summary judgment. FED. R. CIV. PROC. 12(d); *see also Snyder v. Baxter Healthcare, Inc.*, 393 Fed. App'x 905, 907 n.4 (3d Cir. 2010) ("affidavits and other peripheral documents are generally not permissible for a district court's consideration because a motion to dismiss attacks claims contained by the four corners of the complaint") (citing *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Courts, however, have recognized three exceptions to the general rule. The first is established where "a document [is] integral to or explicitly relied on in the complaint." *In Burlington Coat Factory Secs. Litig.*, 114 F.3d at 1426. It is not critical that the extrinsic document be cited in the complaint, only "whether the claims in the complaint are 'based' on an extrinsic document." *Id.* The goal behind the first exception is to prevent a plaintiff from maintaining a claim by extracting an isolated statement of fact from a document where if the document were read in full, context would make it clear that the statement or fact does not support such a claim. *Id.* The second and third exceptions to the general rule allow

---

[3] The documents Plaintiff relies upon include various letters and other correspondence of Defendants, insurance certificates of 1200 Grand, and operating agreements of Thirteenth Street Development, LLC.

factual support from "exhibits attached to the complaint," and "matters of public record." *Pension Benefit Guaranty Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Here, the documents Plaintiff relies upon fail to meet any of the three recognized exceptions to the general rule prohibiting a court from considering matters outside the pleadings. Therefore, this Court will not consider the extraneous documents in measuring the sufficiency of the pleadings.

### III.    The PREDFDA Claims

The First and Second Counts of the Plaintiff's Second Amended Complaint allege violations of PREDFDA against Ursa, Sciarra and Settembre. (Pl.'s Second Am. Compl., ¶¶ 43-58)  The New Jersey PREDFDA expressly holds "[a]ny developer disposing of real property subject to this act, . . . who in disposing of such property makes an untrue statement of material fact or omits a material fact . . . from any public offering statement, . . . shall be liable to the purchaser . . . ." N.J. Stat. Ann. § 45:22A-37(a).  Additionally, PREDFDA expressly provides for personal liability when a corporate officer, or any other "person," "directly or indirectly" controls the developer.  N.J. Stat. Ann. § 45:22A-37(c).  Such persons are "jointly and severally liable with and to the same extent as the developer" and the PREDFDA expressly provides a right to contribution.  *Id.*  The Association's Second Amended Complaint alleges that various misstatements, omissions, and misrepresentations in the POS as to the Condominium's common elements caused the Association to sustain monetary losses.  (Pl.'s Second. Am. Compl., ¶¶ 48-51, 58)  Regulations implementing the PREDFDA, *see* N.J.A.C. § 5:26-7.2(c), as well as the POS itself, state that the developer owed the Association a duty to assure that the common elements were in compliance with all governmental standards, codes, and regulations.

As an initial matter, Defendants assert that claims brought pursuant to PREDFDA must meet the heightened pleading requirements of Rule 9(b). (Defs.' Br. in Supp. of Mot. to Dismiss, at 18) ("Defs.' Br.")  Relying on *Glauberzon v. Pella Corp.*, Defendants state that "Rule 9(b) applies to any claims that involve allegations of fraud, whether or not such claims are denominated as fraud," "including claims brought under . . . PREDFDA." (*Id.*) (citing 2011 U.S. Dist. LEXIS 38138, at *11 (D.N.J. Apr. 5, 2011))  In *Glauberzon*, the court found that the claim for the "violation of the implied warranty of merchantability," "hinged on allegations of fraud." 2011 U.S. Dist. LEXIS 38138, at *3.  Defendants argue that the claims for violation of PREDFDA must meet heightened pleading requirements as they allege the acts of "Providing Misleading and Incomplete Information in Violation of PREDFDA," and "Breach of Express Warranties in [POS] and Statutory Warranties Under PREDFDA."  (Defs.' Br., at 18)  Defendants fail to acknowledge, however, that the claims for the violation of the implied warranties in *Glauberzon* "hinged on allegations of fraud" because the plaintiffs were required to sufficiently alleged facts to toll the statute of limitations under the doctrine of fraudulent concealment.  2011 U.S. Dist. LEXIS 38138, at *4 ("in the absence of a claim for equitable tolling, the breach of implied warranty of merchantability claims asserted by the foregoing Plaintiffs are dismissed without prejudice as time-barred").

Unlike *Glauberzon*, here the Plaintiff need not establish fraudulent concealment, and thus the PREDFDA claims do not necessarily "hinge on allegations of fraud."  Additionally, notwithstanding this Court's prior decision, the Defendants fail to introduce any binding case law

6

applying Rule 9(b) to measure the sufficiency of claims under PREDFDA, nor is this Court aware of such authority. For these reasons, the Court will not require that claims brought pursuant to PREDFDA meet the heightened pleading requirements of Rule 9(b).

### A.   Liability of Ursa, LLC under PREDFDA

The Defendants argue that the Second Amended Complaint claims for damages pursuant to the underlying PREDFDA claims are deficient because the Defendants did not exercise control over the developer, (Defs.' Br., at 20) (*citing Abrahamsen v. Laurel Gardens Limited Partnership*, 276 N.J. Super. 199, 213 (Law Div. 1993)), and further that a financial interest alone is not sufficient to find control. (*Id.*, at 21) As this Court has previously recognized, the *Abrahamsen* court held that the threshold question on the issue of controlling person liability under the PREDFDA is whether the defendant engaged in "minimal participation in the issuance of the public offering statement." *Abrahamsen*, 276 N.J. Super. at 214 (citing *Cola v. Terzano*, 129 N.J. Super. 47, 54 (Law Div. 1974)). The court found that while the "mere act of lending money to a developer would not give rise to liability under PREDFDA, [ ] common sense dictates that" being in the position as a lender raises the potential for control and participation sufficient to establish liability under the Act, and therefore the motion to dismiss was denied. *See Id.*

In light of the reasoning in *Abrahamsen*, it can be inferred that Ursa had both a pecuniary interest as well as exerted direct or indirect control over the developer. The Second Amended Complaint alleges that 1200 Grand Street Renewal "is the developer/sponsor" of 1200 Grand, (Pl.'s Second Amend. Compl., ¶ 2), and that "[Ursa] is a shareholder in the sponsor entity." (*Id.* at ¶ 5) Additionally, it alleges that Ursa, as a "Sponsor," (*Id*, at ¶ 9), "was responsible for the contents of the Public Offering Statement for 1200 Grand Street." (*Id.* at ¶ 47). The Complaint further alleges specific misrepresentations and omissions. (*Id.* at ¶ 48) Accepting the allegations as true and in a light most favorable to the Plaintiff, Ursa, as a shareholder with a financial interest in the development and disposition of the units in 1200 Grand, may have exerted the requisite control over the developer, rendering itself liable under the Act. Thus, the Second Amended Complaint gives both a short and plain statement of the claim, as well as particularity as to the foundation of its claims. For the reasons stated, the Court will deny the motion to dismiss the First and Second Counts of the Second Amended Complaint, as to Ursa Development Group, LLC based on the underlying PREDFDA claims.

### B.   Individual Liability under PREDFDA

Unlike the Third-Party Complaint this Court addressed in its March 18 Opinion,[4] the Plaintiff's Second Amended Complaint fails to allege acts of Sciarra or Settembre to plausibly suggest the level of control necessary to hold them liable with the developer. In its March 18 Opinion, this Court found allegations that the individual defendants, Rohdie and Rothenberg, acted as corporate officers of a related entity that "'drafted' and 'negotiated' the terms of the POS" as sufficient in alleging "direct participation." Here, Plaintiff's Second Amended Complaint fails to allege any level of participation on the part of Sciarra or Settembre, rather

---

[4] *See 1200 Grand Dt. Condominium Assoc. v. Tarragon Corp. (In re Tarragon Corp.)*, 2011 WL 1048633 (Bankr. D.N.J. Mar. 18, 2011).

only that they "are the sole shareholders and/or members of [Ursa]" and that "[Ursa] is a shareholder in the sponsor entity." (Pl.'s Second Amend. Compl., ¶ 5)  These allegations do not rise to the level of direct or indirect participation to hold Sciarra or Settembre liable under PREDFDA.  Additionally, in support of their argument as to the sufficiency of the Complaint, Plaintiff highlights that Defendants have not denied the substance of the PREDFDA claims. (Pl.'s Br., at 15)  To rule on the present motion, however, this Court must only look to the operative pleading to measure its sufficiency.  Accordingly, the Court will grant the motion to dismiss the First and Second Counts of the Second Amended Complaint, as to Sciarra and Settembre based on the underlying PREDFDA claims.

### IV.    Claim for Breach of Fiduciary Duty

The Third Count of the Plaintiff's Second Amended Complaint seeks compensatory damages and other relief based on Defendants' breach of their fiduciary duties as members of the Board of Trustees, or "Sponsor Trustees."  (Pl.'s Second Am. Compl., ¶¶ 59-65)  Under New Jersey Administrative Code 5:26-8.3(b), "The members of the executive board appointed by the developer shall be liable as fiduciaries to the owners for their acts or omissions."  The Plaintiff's Second Amended Complaint alleges that the "Sponsor Trustees" acted negligently or intentionally in the interest of the "Sponsor" by failing to discover, disclose or correct defects in 1200 Grand, and for actions affecting expenditures and capital reserves.  (Pl.'s Second Am. Compl., ¶ 64)  It fails, however, to state facts that "plausibly suggest" the Ursa Defendants are in fact on the executive board and owe such a duty to the Plaintiff or owners.  *See Iqbal*, 129 S. Ct. at 949.

Here, the Plaintiff's Second Amended Complaint, read in a light most favorable to the Plaintiff, fails to allege that the Ursa Defendants served as executive board members.  The Second Amended Complaint includes the Ursa Defendants, along with three other defendants, as the "Sponsor Defendants," (Pl.'s Second Am. Compl., ¶ 9) and that the "Sponsor Defendants designated and selected a majority of the members of the Board of Trustees of the Association." (*Id.* at ¶ 60)  The Second Amended Complaint then concludes that the "Sponsor Defendants had a fiduciary relationship with . . . the Association and its members."  (*Id.* at ¶ 61)  As Defendants correctly state in their brief, the statute imposes fiduciary obligations on those serving on the executive board, not those that select board members. (Defs.' Br., at 23)  Even if this Court were to accept the pleadings as sufficient, and not merely labels and conclusions, the Complaint fails to allege that the Defendants were on the Board of Trustees, a necessary element to impose such a duty on the Defendants.  Accordingly, the Court will grant the motion to dismiss the Third Count of the Second Amended Complaint, insofar as it seeks damages for breach of fiduciary duties as to the Ursa Defendants.

### V.    The CFA Claims

The Fourth Count of Plaintiff's Second Amended Complaint alleges violations of the CFA.  A cause of action under the CFA has three elements: (1) a defendant committed unlawful conduct; (2) a plaintiff suffered an ascertainable loss; and (3) a causal nexus exists between the unlawful conduct and the loss.  *New Jersey Citizen Action v. Schering*, 367 N.J. Super. 8, 12–13 (App. Div. 2003).  The unlawful conduct may take the form of: (1) an affirmative act; (2) a knowing omission; or (3) a violation of specific regulations promulgated under the CFA.  *Allen*

8

*v. V and A Bros., Inc.*, 414 N.J. Super. 152, 156 (App. Div. 2010) (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17–19, 647 A.2d 454 (1994)), *rev'd on other grounds*, 208 N.J. 114, 133, 136 (2011). When the allegation consists of an affirmative act, the plaintiff need not prove intent. *Id.*; *Viking Yacht Co. v. Composite One LLC*, 2010 U.S. App. LEXIS 13483, at *9 (3d Cir. N.J. July 1, 2010).

Additionally, courts have found that individuals who were principals or employees of corporations sued under the CFA may be held personally liable if they "directly participated" in the unlawful conduct. *Allen*, 208 N.J. at 131, 136. Such individuals are "persons" as contemplated by the CFA in its liability provisions. N.J. STAT. ANN. §§ 56:8-1(d) and 56:8-2. While courts have not found it necessary to pierce the corporate veil in order to reach corporate principals and employees who violate the CFA, "[i]ndividual liability for a violation of the CFA will necessarily depend upon an evaluation of both the specific source of the claimed violation that forms the basis for the plaintiff's complaint as well as the particular acts that the individual has undertaken." *Allen*, 208 N.J. at 136.

### A.   Pleading Requirements for CFA Claims

Pursuant to Federal Rule of Bankruptcy Procedure 7009, and recognizing that a 12(c) motion for judgment on the pleadings that alleges the plaintiff has failed to state a claim is treated as a Rule 12(b)(6) motion, *see Huertas*, 2009 U.S. Dist. LEXIS at *21 (citing *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991)), a 12(c) motion for judgment on the pleadings may be predicated upon a plaintiff's failure to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

In the present case, the Association's Second Amended Complaint describes the alleged unlawful conduct in violation of the CFA as "unconscionable commercial practices and/or fraud in connection with the sale of the materials, good and/or products . . . ." (Pl.'s Second Am. Compl., ¶ 68) This Court recognized in its March 18, 2011 Opinion, "[w]here the unconscionability claim is pled concurrently with the fraud claim, as in the Association's Complaint, (Pl.'s First Am. Compl., ¶ 59), Rule 9(b) applies to all CFA claims." *1200 Grand St. Condominium Assoc. v. Tarragon Corp. (In re Tarragon Corp.)*, 2011 Bankr. LEXIS 1001, at *14 (Bankr. D.N.J. Mar. 18, 2011) ("March 18th Opinion") (citing *In re Norvergence*, 424 B.R. 663, 692–694 (Bankr. D.N.J. 2010). The language of the CFA claim in the Second Amended Complaint presently before the Court is identical to that of the CFA claim in the First Amended Complaint at issue in the March 18th Opinion. Since that decision, Plaintiff has had the opportunity to amend the complaint and has failed to do so, leaving this Court no choice but to find that unconscionability is pled concurrently with a fraud claim. Therefore, this Court will apply the heightened pleading requirement of 9(b) in reviewing the sufficiency of the CFA claims in the Plaintiff's Second Amended Complaint.

The Plaintiff argues that because it is not alleging fraud, but rather only unconscionability, there is no specificity requirement. (Pl.'s Br., at 18) This Court's review, however, is limited to the four corners of the complaint, *see Snyder*, 393 Fed. App'x. at 907 n.4, which clearly alleges "unconscionable commercial practices and/or fraud in connection with the sale . . . ." (Pl.'s Second Am. Compl., ¶ 68) Accordingly, this Court rejects the argument and looks only to the pleadings to determine that Rule 9(b) applies.

Rule 9(b) provides that "[i]n alleging fraud or mistake, *a party must state with particularity the circumstances constituting fraud or mistake*. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b) (emphasis added). The heightened pleading requirement serves "to provide notice, not to test the factual allegations of the claim." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 n.2 (3d Cir. 2003). The requirement is generally deemed satisfied by allegations of date, place, time, and manner, or by "alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); *In re Rockefeller Ctr. Props. Secs. Litg.*, 311 F.3d 198, 217 (3d Cir. 2002) (answering the "who, what, when, where and how" questions will satisfy the 9(b) requirement).

Rigid application of Rule 9(b) prior to discovery, however, has the potential to "permit sophisticated defrauders to successfully conceal the details of their fraud." *In re Craftmatic Secs. Litg.*, 890 F.2d 628, 645 (3d Cir. 1989) (quoting *Christidis v. First Penn. Mortgage Trust*, 717 F.2d 96, 99–100 (3d Cir. 1983)). Thus, courts may apply the Rule with some flexibility, especially where "factual information is peculiarly within [a] defendant's knowledge or control." *In re Norvergence*, 424 B.R. at 688 (quoting *Saporito v. Combustion Eng'g, Inc.*, 843 F.2d 666, 674–75 (3d Cir. 1988), *vacated on other grounds by Combustion Eng'g, Inc. v. Saporito*, 489 U.S. 1049, 109 S. Ct. 1306, 103 L. Ed. 2d 576 (1989)). Bankruptcy courts, in particular, will often interpret Rule 9(b) "liberally." *Id.* Despite the Rule's flexible nature, plaintiffs "must accompany their allegations with facts indicating why the charges against defendants are not baseless and why additional information lies exclusively within defendant['s] control." *In re Craftmatic Secs. Litg.*, 890 F.2d at 646. Furthermore, the Rule does not permit plaintiffs to "merely lump multiple defendants together but requires [the complaint to] . . . inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *In re Norvergence*, 424 B.R. at 688.

### B.    The Claims Against the Ursa Defendants

Plaintiff correctly states that "the [CFA] deals, not only with agreements, but primarily that with conduct in connection with the sale or advertisement of merchandise or real estate," and further, "an unconscionable commercial practice or conduct under the Act is not limited to the initial transaction but extends to the subsequent performance of such person involved in the transaction." *D'Ercole Sales, Inc. v. Fruehauf Corp.*, 206 N.J. Super. 11, 25 (App. Div. 1985) (internal citations omitted); (Pl.'s Br., at 19)

The Second Amended Complaint is successful in alleging the necessary elements for a cause of action under the CFA. The Plaintiff alleges that the "Sponsor was responsible for the contents of the Public Offering Statement for 1200 Grand Street," (Pl.'s Second Am. Compl., ¶ 47) and that "The Public Offering Statement contains material misrepresentations and omissions . . . ." (*Id.* at ¶ 48) Specific to the claim for violation of the CFA, the Plaintiff alleges that "[t]he members of the Association relied on the representations made by the Sponsor in the Public Offering Statement to its detriment." (*Id.* at ¶ 67)

The Plaintiff fails, however, to allege with particularity the circumstances leading to the violation as required by rule 9(b). Plaintiff fails to allege the "who, what, when, where and how"

that would typically satisfy the requirement or to allege facts that would indicate that the claims are not baseless. The pleadings broadly group all of the defendants together, and fail to inform each defendant separately of the allegations surrounding their individual participation in the fraud. It follows that the CFA claims asserted against Sciarra and Settembre suffer from these insufficiencies. For liability to reach Sciarra and Settembre, the Plaintiff needed to have alleged facts that would plausibly suggest that each directly participated in the unconscionable commercial practice, and further support those allegations with facts alleging the who, what, when, where and how, to satisfy the heightened pleading requirement of Rule 9(b). Accordingly, this Court finds that the Plaintiff has not met the pleading standard for such a claim, and dismisses the claims for violation of the CFA insofar as they seek damages and other relief from the Ursa Defendants.

## VI.    Claims for Negligence and Failure to Maintain Adequate Capital Reserves

The Plaintiff alleges that Defendants were negligent in the development of 1200 Grand including the design, construction and supervision of the third- and fourth-party defendants, and that Defendants knew, or should have known, that the capital reserve was inadequate, and as a result the Association and owners sustained substantial damages. (Pl.'s Second Am. Compl., ¶¶ 71–85) Defendants argue they are protected as shareholders in limited liability corporations and cannot be held liable without piercing the corporate veil.[5] (Defs.' Br., at 25–26)

It is settled law, and undisputed by the parties, that "[c]ourts interpreting the veil piercing of an LLC have adopted the test set forth in *State, Dept. of Environmental Protection v. Ventron Corp.*, 94 N.J. 473 (1983)." (Defs.' Reply Br. in Supp. of Mot. to Dismiss, at 23) ("Defs.' Reply Br."); (Pl.'s Br., at 23) In order to pierce the corporate veil, a plaintiff must prove two elements: (1) "the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent," and (2) "the parent has abused the privilege of incorporation by using the subsidiary to perpetuate a fraud or injustice, or otherwise to circumvent the law." *Ventron*, 94 N.J. at 501; *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir. 1988). A finding of domination requires "more than mere majority or complete stock control," but "complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own." *Craig*, 843 F.2d at 150.

Plaintiff's argument that the Second Amended Complaint sufficiently alleges that Ursa was "thoroughly dominated" by Sciarra and Settembre, or that the Sponsor was "thoroughly dominated" by Ursa, Sciarra or Settembre, falls short of the requirements for piercing the corporate veil. Plaintiff alleges in the Second Amended Complaint that "Defendant Ursa Development Group, LLC is a shareholder in the sponsor entity," (Pl.'s Second Am. Compl., ¶ 5) and that "Defendants Septembre [sic] and Sciarra are the sole shareholders and/or members of Ursa Development Group, LLC." (*Id.* at ¶ 6) It is clear, in light of *Craig*, the allegations fail

---

[5] Defendants highlight that there is more than one layer of limited liability protecting Sciarra and Settembre. Ursa, as a shareholder of the Sponsor, a separate and distinct corporate entity, is afforded limited liability from claims against the Sponsor. Additionally, Sciarra and Settembre, as shareholders in Ursa Development Group, LLC, are afforded liability from claims against Ursa, thus requiring the Plaintiff to allege facts that would support the piercing of two corporate veils to impose liability on Sciarra or Settembre.

to allege the level of domination required to satisfy the first element of the *Ventron* test. Furthermore, the Plaintiff fails to make any allegations that the Defendants "abused the privilege of incorporation" or used any of the defendant corporations to "perpetuate a fraud or injustice, or otherwise circumvent the law."

While not argued by Plaintiff here, this Court has previously recognized that liability for negligent acts of a corporation may be extended to corporate officers.[6] It is well settled that "[c]orporate officers are liable for their torts, although committed when acting officially." *Kugler v. Koscot Interplanetary, Inc.*, 120 N.J. Super. 216, 256 (citing 3 *Fletcher Cyclopedia of Corporations* (Perm. Ed.), §§ 1135, 1143, pp. 778, 800); *See also Allen*, 208 N.J. 114. Typically, the 'participation theory' provides the basis for actions against those officers. The participation theory allows for liability when the officer is "sufficiently involved in the commission of the tort." *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 303 (2002). Predicate to an officer's liability "is a finding that the corporation owed a duty of care to the victim, the duty was delegated to the officer and the officer breached the duty of care by his own conduct." *Id.* at 303. As this argument was not raised by Plaintiff in this matter, it follows that Plaintiff has not established the personal participation needed to hold corporate officers liable without piercing the corporate veil.

Failing to allege facts sufficient to support piercing the corporate veil of the Sponsor or Ursa, and not arguing or pleading sufficiently to support holding Settembre and Sciarra liable for their acts as corporate officers or employees of Ursa, Plaintiff's allegations merely conclude that Defendants are liable in tort without providing any factual support. Therefore, this Court holds that Ursa cannot be held liable for negligence or claims for failing to maintain adequate reserves, and similarly that neither Settembre nor Sciarra can be held personally liable. Accordingly, the Court will grant the motion to dismiss the Fifth, Sixth, Seventh and Eighth Counts of the Second Amended Complaint, insofar as they seek damages and other relief for negligence and failure to maintain adequate capital reserves as to the Ursa Defendants.

## **CONCLUSION**

For the reasons stated, the motion to dismiss is denied as to the First and Second Counts, as to Ursa Development Corp., LLC. The motion, as to the First and Second Counts with respect to Michael Sciarra and Mark Settembre, is granted. Further, the motion is granted as to the remaining counts of the Second Amended Complaint for violation of the CFA, negligence and breach of fiduciary duty, as to each of the Ursa Defendants.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

*s/     Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated:  January 10, 2012

---

[6] *See* Sept. 27th Opinion, at *8.

12