**NOT FOR PUBLICATION**

**FILED**
JAMES J. WALDRON, CLERK

**APRIL 16, 2013**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ *Ronnie Plasner*
JUDICIAL ASSISTANT

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **In Re:**<br><br>**TARRAGON CORPORATION,** *et al.***,**<br><br>Debtors. | Case No.: 09-10555 (DHS)<br><br>Judge: Donald H. Steckroth, U.S.B.J. |
| **1200 GRAND STREET CONDOMINIUM ASSOCIATION,**<br><br>Plaintiff,<br><br>v.<br><br>**1200 GRAND STREET URBAN RENEWAL LLC,** *et al.***,**<br><br>Defendants. | Adv. Pro. No.: 09-01465 (DHS) |

# **OPINION**

**APPEARANCES:**

**TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP**
Aileen F. Droughton, Esq.
322 Highway 35 South
First Floor
Red Bank, New Jersey 07701
*Counsel for Defendant,*
*Axis Surplus Insurance Company*

**LUM, DRASCO & POSITAN, LLC**
Paul A. Sandars, III, Esq.
Scott E. Resier, Esq.
103 Eisenhower Parkway
Roseland, New Jersey 07068
*Counsel for Plaintiff,*
*1200 Grand Street Condominium Association*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

The defendant, Axis Surplus Insurance Company ("Axis"), filed a motion to dismiss the complaint filed by the plaintiff, 1200 Grand Street Condominium Association ("Association" or "Plaintiff"), for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  Also before the Court, is the Plaintiff's Cross-Motion seeking to compel Axis to assert a defense on behalf of the Tarragon entities ("Tarragon Entities").

Axis argues that the Association's claims should be dismissed because Axis never issued policies to entities alleged by the Association to be insured, any alleged assignment is invalid and, alternatively, that the Association does not have standing to bring a direct cause of action against Axis because there has not yet been a judgment as to the underlying claim.  The Association counters that the Debtor and Tarragon Entities were intended to be covered by the Axis Policies and, therefore, had the authority to assign them to the Association, the assignment is a valid assignment of a claim, and that, additionally, Axis must be compelled to assert a defense for the Tarragon Entities.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 as amended September 18, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).  Venue is proper under 28 U.S.C. §§ 1408 and 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND AND FACTS

This proceeding was originally initiated by the Association in the New Jersey state court claiming damages arising from alleged construction defects in the Association's condominium building at 1200 Grand Street, Hoboken, New Jersey (the "1200 Grand Condominium").  The defendants in the case, including the Tarragon Entities, removed the matter to the district court, which then referred the case to this Court where the Tarragon Entities had filed a chapter 11 bankruptcy petition.

**The Axis Policies**

Axis issued three policies to various Tarragon entities.  Notably, Axis contends that it did not issue any policies to 1200 Grand Street, Tarragon Realty, or Thirteenth Street Development, LLC. (Cert. of Keith H. Phillips, ¶ 4)  Axis did issue a Commercial General Liability Policy ("CGL Policy") to the Tarragon Corporation, Tarragon Management, Inc., and Tarragon South Development, Corp. The CGL Policy included that,

> [Axis] will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies.  We will have the right and duty to defend the insured against any suit seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or property damage" to which this insurance does not apply.

3

(Phillips Aff. Ex.'s A)  The CGL Policy was effective for the period of December 1, 2004 through December 1, 2005.

The CGL Policy was amended to provide Owners and Contractors Protective Liability Coverage (the "OCP Coverage") from January 10, 2005 through July 10, 2006.  The OCP Coverage included the exact same provisions as the CGL Policy.  The CGL Policy, however, was cancelled May 1, 2005.  It is unclear from the record whether the OCP Coverage that amended the CGL Policy continued in effect beyond that date.

Lastly, Axis issued an Excess Liability Policy (the "Excess Policy") to Tarragon Edgewater, LLC for January 11, 2005 through July 11, 2006.  The Excess Policy stated as follows:

> The Coverage provided by this policy is excess insurance and, except as otherwise stated in this policy, follows the terms, conditions, exclusions, and endorsements of the "first underlying insurance" as shown on Item 8. Of the Declarations.  Further, this policy will follow any additional exclusions included in any other "underlying insurance."  Under no circumstances will this coverage be broader than any "underlying insurance."

(Phillips Add., Ex. C)  The OCP Coverage was listed as underlying insurance.  Therefore, the Excess Policy incorporated the terms and conditions of the OCP Coverage.  All three of the policies contained clauses restricting assignment of the policies as well as restricting the joinder of Axis in any legal action involving the insured.  The "Legal Action Against Us" clause of the Axis Policies states that

> No person or organization has a right under this Coverage Part:
>
> a.  To join us as a party or otherwise bring us in a "suit" asking for damages from an insured; or
> b.  To sue on this Coverage Part unless all of its terms have been fully complied with.
>
> A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured . . . .

(Phillips Aff. Ex.'s A, B, and C)  Finally, each of the policies, including the Excess Policy by its incorporation of the OCP Coverage provisions, provided that the "rights and duties under this policy may not be transferred without [Axis's] written consent except in the case of death of an individual named insured."  (Phillips Aff. Ex.'s A, B, and C)

**The Adversary Proceeding and Consent Order**

On July 9, 2012, the Court entered a consent order between the Association and the Tarragon Entities, defined to include 1200 Grand Street Urban Renewal, LLC, Thirteenth Street Development, LLC, and Tarragon Realty, Inc. ("Consent Order").  [Doc. No. 305 ("Consent Order")]  The Consent Order assigned the rights of Tarragon and its co-defendants' rights in all of their insurance policies to the Association.  Specifically, the Consent Order provided,

> With respect to the Tarragon Entities, the automatic stay of 11 U.S.C. § 362 be and the same is hereby lifted to allow the Association to proceed solely against liability insurance policies, if

> any, of the Tarragon Entities during the relevant time period giving rise to the Association's claims in the within action;
>
> . . .
>
> Subject to the above paragraphs, the Tarragon Entities assign to the Association, without representation or warranty, their rights and interests, if any, in the claim, if any, relating to the alleged losses suffered by Plaintiff in the within action and the Proofs of Claim (the "Claims") under liability insurance policies, if any, that may be applicable to the Claims for the limited purpose of allowing Plaintiff to pursue direct recovery against the Tarragon Entities for the Claims, only against any liability insurance policy, if any, issued to the Tarragon Entities, including but not limited to the following: . . . [the policy] issued by Axis Specialty Limited [sic] .
> . . .

(Consent Order, ¶¶ 1, 4.b.)

On August 8, 2012, the Association filed a fourth amended complaint asserting a claim against Axis (the "Complaint"). [Doc. No. 312 ("Compl.")] The Complaint alleges that,

> Upon information and belief, [Axis] . . . [issued a policy to] 1200 grand Street Urban Renewal Dev. LLC and 1300 Grand Street Urban Renewal Dev., LLC listed as Additional Named Insured.
>
> Pursuant to the Consent Order of the U.S. Bankruptcy Court, the Tarragon entities [sic] agreed to lift the automatic stay pursuant to 11 U.S.C. § 362 to allow Plaintiff by way of direct claim and Defendants via cross-claims, to proceed against the insurance policy for recovery for any damages caused by the Tarragon Entities, as well as any other insurance policy offering coverage to Tarragon.
>
> Pursuant to the Consent Order, the Tarragon Entities assigned to Plaintiff their rights and interest to assert claims against these insurance companies for damages as alleged in this matter.
>
> . . .
>
> By virtue of this assignment, . . . [Axis and the other insurers] are liable to Plaintiff for damages caused by the Tarragon Entities, including but not limited to its or their misrepresentations under PREDFDA, breaches of fiduciary duty, negligent construction, breach of contract, attorney's fees, unconscionable commercial practices and fraud in violation of the Consumer Fraud Act, damages, compensatory damages, consequential damages, incidental damages, punitive damages, economic damages, violation of the Condominium Documents, breach of express and implied warranties contained in the Public Offering Statement, and failure to pay monthly maintenance fees prior to statutory turnover

>of the Tarragon Entities, as set forth more fully in the preceding paragraphs.
>
>Plaintiff accordingly seeks payment by the Insurance Company Defendants for an amount equal to the damages covered by any insurance policies issued by Axis to any and all of the Tarragon entities [sic], by virtue of the assignment of these claims to Plaintiff as set forth in the preceding paragraphs.

(Compl., ¶¶ 174, 175, 176, 178 and 179)

After receiving notice of the Complaint, Axis obtained an extension of time to respond up to an including October 31, 2012. Prior to being served with the Complaint, Axis had no claim or other information related to this litigation and is not a signatory to the Consent Order.

## DISCUSSION

### I. Standard for Dismissal Under Federal Rule of Civil Procedure 12(b)(6) for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief may be granted. Bankruptcy Rule 7012 provides that Rule 12(b)(6) applies in adversary proceedings. Federal Rule of Civil Procedure 8 provides that pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Upon considering a 12(b)(6) motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). The factual allegations contained in the complaint "must be enough to raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Furthermore, "[t]he allegations of the complaint should 'plausibly suggest' the pleader is entitled to relief." *Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315, 321 (3d Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1966). The Supreme Court clarified the "plausibility" standard in *Ashcroft v. Iqbal* by holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation omitted). "The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.*

### II. Whether the Assigning Tarragon Entities Are Covered Under the Axis Policies

As an initial matter, Axis asserts that the Tarragon Entities' assignment of their rights in the Axis Policy is invalid because the assignors, the Tarragon Entities as defined to include 1200 Grand Street Urban Renewal, LLC, Tarragon Realty Investors, Inc., and Thirteenth Street Development, LLC in the Consent Order, are not covered by any Axis policies. In support, Axis certifies that the Axis Policies insure Tarragon Corporation, Tarragon Management, Inc., and Tarragon South Development, Corp., and, therefore, the assigning Tarragon Entities were not

6

insured and have no rights to assign. The Association counters this argument by introducing a Certificate of Liability Insurance (the "Certificate") produced by Burkey Risk Services, Inc. that lists 1200 Grand Street Urban Renewal and 1300 Grand Street Urban Renewal, LLC as "Additional Named Insured" under the Axis Policies and that the Certificate was provided to it by Tarragon. (Cert. of Paul Sanders, III, Ex. A) The Association contends the Certificate is evidence that the Axis Policies were intended to cover the development of the 1200 Grand Condominium and, further, that the Tarragon Entities were insured under the Axis Policies and could execute a valid assignment. Axis contends that the Certificate is not dispositive or even relevant to this matter as it was not produced by Axis, and that even if it was, the language of the Certificate expressly precludes it from expanding the coverage of the underlying Axis Policies. Additionally, Axis argues that an insurance broker, here Burkey Risk Services, Inc., is not the agent of Axis, but rather of Tarragon as the insured.

While this dispute raises a genuine issue of material fact that will need to be determined by the Court, that determination is not required at this stage of the proceeding. Even if the Court was to find that Axis is liable to the Tarragon Entities for purposes of this Motion, for the forthcoming reasons Axis's Motion would be granted notwithstanding that liability. For that reason, the Court does not make a determination at this time whether Axis is a liable insurer.

### III.     Whether Assignment of the Policy was Valid Under New Jersey Law

Assuming, *arguendo*, that the Tarragon Entities are covered by the Axis Policies, Axis asserts that any assignment is invalid under both New Jersey state law and the terms of the Axis Policies. The Association, relying on *Elat, Inc. v. Aetna Casualty and Surety Co.*, 280 N.J. Super. 62 (App. Div. 1995), argues that prohibitions on assignment only prevent assignment of the policy itself, not claims against the policy. In response, Axis asserts two counter-arguments. First, Axis argues that the Tarragon Entities had no rights to assign. This argument is predicated on a finding that the Tarragon Entities were not covered as "Additional Named Insured" in light of the Certificate as discussed above. Its second argument, relying on *Integrated Solutions v. Service Support Specialties, Inc.*, 124 F.3d 487 (3d Cir. 1997), is that a claim cannot be assigned before a judgment or settlement of the claim has been rendered and that this is supported by the *Elat* case cited by the Association.

In *Elat*, the plaintiff asserted claims against the estate of a former business owner to recover investigative and remediation costs incurred by the plaintiff in cleaning ground contamination from the business's prior operation. *Elat*, 280 N.J. Super. at 65. The plaintiff obtained a judgment against the estate for the costs incurred and future costs. *Id.* The estate, however, had a negative net value and could not satisfy the judgment. *Id.* To prevent the plaintiff from executing on the estate's other assets, the estate assigned to the plaintiff all of its rights and claims against its insurer. *Id.* The lower court granted the insurance company's motion to dismiss pursuant to non-assignment and non-joinder clauses in the underlying policies. *Id.* The appellate court reversed, noting that the underlying policy and language only prevented the assignment of the policy without consent, not assignment of a claim or loss. *Id.* at 66. The appellate court ultimately held that once a loss has occurred, there is no risk in allowing an assignment and, therefore, assignment of a claim is like assignment of debt, permissible, and cannot be restricted by such clauses. *Id*. at 66-67 (citing *Ocean Accident and Guarantee Co. v. Southwestern Bell Tel. Co.*, 100 F.2d 441 (8th Cir. 1939)). The court stated that,

7

> No assignment [provisions within insurance policies] do not prevent the assignment after loss for the obvious reason that the clause by its own terms ordinarily prohibits merely the assignment of the policy, as distinguished from a claim arising thereunder, and the assignment before loss involves a transfer of a contractual relationship while the assignment after loss is the assignment of a right to a money claim.

*Id.* at 67 (citing 16 George J. Couch, *Couch Cyclopedia of Insurance Law* §63.40 (rev. 2d ed. 1983)); *see also Integrated Solutions*, 124 F.3d 487 (finding that under New Jersey law the assignee of prejudgment tort claims had no standing to sue). Lastly, the *Elat* court noted that the purpose behind a no-assignment clause is to protect the insurer from insuring a risk other than that intended, but found that this purpose is not violated by an insured by assigning its claim for a loss that has already occurred. *Elat*, 280 N.J. Super. at 67.

Here, Axis's insurance contract expressly stated that consent is required for an assignment of the policy. (Phillips Aff., Ex. A, B and C) ("Your rights and duties under this policy may not be transferred without [Axis's] written consent . . . .") No such consent has been given. Therefore, the only assignment that can have occurred by means of the Consent Order is the assignment of a claim, not general rights under the Axis Policy. Axis, the insurer, does not become the debtor of the Association until there is an "actual loss." *Elat*, 280 N.J. Super. at 66. ("An insurer becomes absolutely a debtor to the assured for the amount of the actual loss, to the extent of the sum insured, and it may be transferred or assigned like any other debt.").

Thus, while damages have been alleged, the Association has not incurred actual loss until there is a judgment fixing that amount. This Court finds that the Consent Order granted the Association only the right to assert "claims" against the Axis Policy and those claims are limited to seeking relief directly from Axis for a final judgment rendered against the Tarragon Entities or a settlement with the written consent of Axis. The Consent Order does not grant the Association unfettered rights to assert causes of action against Axis that it would have asserted against the Tarragon Entities. Axis is only subject to claims for amounts owed on the Axis Policies, not the conduct of the Tarragon Entities. To hold otherwise would be to impute liability and duties on Axis it did not bargain for. Such a decision would be contrary to Axis's intention and public policy.

### IV.    Whether the Association can Bring Suit Directly Against Axis

Still assuming, *arguendo*, that the Tarragon Entities are covered by the Axis Policies, Axis also contends that, because there has not been a valid assignment, the general rule in New Jersey, which prohibits a third-party from bringing a direct cause of action against the insurer of the alleged tortfeasor prior to judgment against the latter, prohibits the Association from asserting a claim against it until there has been a judgment or settlement. *Caldwell Trucking PRP Group v. Spaulding Composites Co.*, 890 F. Supp. 1247, 1253 (D.N.J. 1995); *President v. Jenkins*, 357 N.J. Super. 288, 312 (App. Div. 2003) (citing *Cruz-Mendez v. ISU/Ins. Servs.*, 156 N.J. 556, 566–67 (1999). The Association counters that the general rule is inapplicable because it is not a third-party, but, rather, an assignee asserting a claim in the shoes of the insured.

The Association's argument is predicated on two findings: first, that the assignment was of the entire interest the Tarragon Entities held under the Axis Policies; and, second, that the

assignment was valid. As discussed above and pursuant to *Elat*, the most that could have been assigned without the consent of Axis is the right to assert a claim and, therefore, the Association is not an assignee of the policy, but rather a third-party.

The Axis Policies stated that Axis would pay the amount that the insured becomes "legally obligated to pay" and that "[a] person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured." (Phillips Aff., Ex. A, B and C) Additionally, the policies contain Legal Action clauses, restricting any person or organization from joining Axis as a party or bringing any claim against Axis until there has been a judgment or settlement. (Phillips Aff., Ex. A, B and C) Even in the hands of the Tarragon Entities, the right to file a claim against the Policy would require a final judgment or settlement. Furthermore, with respect claims asserted against the Excess Policy, that judgment or settlement must be in an amount that exceeds all other insurance coverage held by the Tarragon Entities before Aixs would be liable under the Policy. Therefore, any claims that the Association seeks to file against the Policies at this stage are premature as there has been no determination as to any liability of the Tarragon Entities, the amount of the claims, coverage from other insurers, or the excess amount that would be covered by the Excess Policy issued by Axis.

For these reasons and those discussed above, the Court grants Axis's Motion. The assignment pursuant to the Consent Order granted only the right to assert a monetary claim based on a final judgment or settlement against the Tarragon Entities. Until such time that those amounts are fixed, Axis is not liable to the Association for claims asserted on behalf of the Tarragon Entities.

### V.     The Associations Cross-Motion Compelling Axis to Provide a Defense

In its cross-motion, the Association seeks a declaration from the Court compelling Axis to tender a defense for the Tarragon Entities against which the Association alleges damages resulting from negligence and other misconduct. Axis provides two arguments in opposition and in support of why it should not be so compelled: (1) it is not the insurer of the Tarragon Entities being sued by the Association, and (2) even if they were insured by Axis, Axis would not be required to provide a defense under the terms of the Axis Policies and Self-Insured Retention Clause ("SIR Clause"). The first of Axis's arguments is discussed above and need not be restated. In addressing Axis's second argument, the Court again assumes, *arguendo*, that the Tarragon Entities are covered by the Axis Policies.

Reviewing the provisions of the Axis CGL Policy reveals that Axis did contract for a duty to defend the insured under the policy. That duty, however, was amended under endorsement number 7, which included a "Self Insured Retention" clause ("SIR Clause"). The SIR Clause within the Axis' Policies, as amended, provides as follows:

> [Axis] shall have the right but not the duty, at our own expense, to assume charge of the defense and/or settlement of any claim or "suit" brought against an insured and, upon [Axis's] written request, you shall tender such portion of the self-insured retention as [Axis] consider[s] necessary to complete the settlement of a claim or "suit."

(Phillips Aff., Ex. A) Additionally, a provision of the Axis Excess Policy expressly disclaimed this duty. The Excess Policy provides that,

9

> We shall not be called upon to assume charge of the settlement or defense of any claim made, suit brought, or proceeding instituted against you. However, we will have the right and opportunity to associate with you in the defense and control of any claim, suit, or proceeding we reasonably think likely will involve us.

(Phillips Aff., Ex. C)

Axis shall not be compelled to assume any liability or duty for which it had not contracted with the Tarragon Entities. This holds true for duties to defend the insured just as it does for limiting liability on claims. *see e.g. Campbell Soup Co. v. Liberty Mut. Ins. Co.*, 239 N.J. Super. 488, 495 (Ch. Div. 1990) ("The duty of the insurer to defend a third-party action brought against the insured arises out of the contract of insurance; if there is no contract to defend, there is no duty to defend."), *W9/PHC Real Estate LP v. Farm Family Cas. Ins. Co.*, 407 N.J. Super. 177, 202 (App. Div. 2009) ("Since defendant's coverage was expressly excess, it does not have a duty to defend.") It follows that since Axis had no duty to defend the Tarragon Entities, one cannot be asserted by the Association.

The Court finds that Axis does not have a duty to tender a defense for the Tarragon Entities. As such, the Plaintiff's Cross-Motion is denied.

## CONCLUSION

For the reasons set forth above, Axis's Motion to Dismiss is granted and the Association's Cross-Motion is denied. The Court makes no determination as to whether the Tarragon Entitles are covered under the Axis Policies.

An Order in conformance with this Opinion has been entered by the Court and a copy attached hereto.

*s/ Donald H. Steckroth*

_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated:    April 16, 2013