**NOT FOR PUBLICATION**

**FILED**
JAMES J. WALDRON, CLERK

**APRIL 16, 2013**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ *Ronnie Plasner*
JUDICIAL ASSISTANT

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **In Re:**<br><br>**TARRAGON CORPORATION**, *et al.*,<br><br>Debtors. | Case No.:   09-10555 (DHS)<br><br>Judge:   Donald H. Steckroth, U.S.B.J. |
| **1200 GRAND STREET CONDOMINIUM ASSOCIATION,**<br><br>Plaintiff,<br><br>v.<br><br>**1200 GRAND STREET URBAN RENEWAL LLC,** *et al.*,<br><br>Defendants. | Adv. Pro. No.:   09-01465 (DHS) |

**OPINION**

**APPEARANCES:**

**TRENK, DIPASQUALE DELLA FERA & SODONO, P.C.**
Joel Max Eads, Esq.
347 Mt. Pleasant Avenue, Suite 300
West Orange, New Jersey 07052
*Counsel for Defendant,*
*Mt. Hawley Insurance Company*

**LUM, DRASCO & POSITAN, LLC**
Paul A. Sandars, III, Esq.
Scott E. Resier, Esq.
103 Eisenhower Parkway
Roseland, New Jersey 07068
*Counsel for Plaintiff,*
*1200 Grand Street Condominium Association*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is a motion filed by the defendant, Mt. Hawley Insurance Company ("Mt. Hawley"), to dismiss the complaint filed by the plaintiff, 1200 Grand Street Condominium Association ("Association" or "Plaintiff"), for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and, alternatively, to stay discovery for sixty (60) days and adjust all discovery deadlines accordingly ("Motion"). Also for the Court's determination is the cross-motion filed by the Plaintiff seeking to compel Mt. Hawley to tender a defense for the debtor Tarragon entities ("Tarragon Entities") ("Cross-Motion").

Mt. Hawley argues that: (1) well settled law precludes a plaintiff who asserts a claim against an insured from also bringing a claim against the insurer until the claim against the insured is resolved by final judgment or settlement, and (2) the claim against Mt. Hawley is not ripe for adjudication because the claims against the debtor's other policies have not been resolved. Alternatively, Mt. Hawley requests that if its Motion is denied, discovery deadlines be stayed for 60 days as it only received notice of the complaint against it on August 29, 2012. The Association counters that the complaint does not allege that it is entitled to a judgment against Mt. Hawley, but only that it has the right and interest to assert a claim against the insurance policy issued by Mt. Hawley. The Association further contends that, pursuant to that right, Mt. Hawley should be required to indemnify the Association for damages proved against Tarragon should the Association carry its burden in proving such damages.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 as amended September 18, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

**BACKGROUND AND FACTS**

This proceeding was originally initiated by the Association in the New Jersey state court claiming damages arising from alleged construction defects in the Association's condominium building at 1200 Grand Street, Hoboken, New Jersey (the "Condominium"). The defendants in the case, including the Tarragon Entities, removed the matter to the district court, which then referred the case to this Court where the Tarragon Entities had filed a chapter 11 bankruptcy petition.

**The Mt. Hawley Policy**

Mt. Hawley insured the Tarragon Entities under an Excess General Liability Policy ("Policy"). The Policy provided that,

> [Mt. Hawley] will pay on behalf of the insured, ultimate net loss in excess of the self-insured retention [,which includes all sums that the insured shall become legally obligated to pay as damages, whether by reason of final adjudication or settlement with Mt.

3

> Hawley's written consent,] because of: (1) bodily injury, (2) property damage, (3) personal injury, or (4) advertising injury to which this policy applies . . . ."

(Certification of Andrea J. Dean, October 24, 2012 ("Dean's Cert."), Ex. 1, pp. 1, 4) It further provided that, "[t]his insurance is [sic] excess of other insurance whether primary, excess, contingent or on any other basis, except other such insurance purchased specifically to apply in excess of this insurance." (Dean's Cert., Ex. 1, p. 14) Notably, the Policy contained a "no action" clause that provided,

> No person or organization has a right under this policy: (a) to join [Mt. Hawley] as a party or otherwise bring [Mt. Hawley] into a suit asking for damages from any insured; or (b) to sue [Mt. Hawley] on this policy unless all of its terms have been fully complied with.

(Dean's Cert., Ex.1, p. 14) Thus, pursuant to the Policy, a third party can only sue Mt. Hawley after the third party settles with, or obtains a judgment against, the insured. While this appears on its face to be a straightforward contractual issue, the Association relies on a consent order between the Association and Tarragon Entities entered by the Court prior to Mt. Hawley's involvement in this adversary proceeding, thus, giving rise to the dispute forming the basis of this Motion.

**The Adversary Proceeding and Consent Order**

On July 9, 2012, the Court entered a consent order between the Association and the Tarragon Entities, defined to include 1200 Grand Street Urban Renewal, LLC, Thirteenth Street Development, LLC, and Tarragon Realty, Inc. ("Consent Order"). [Doc. No. 305 ("Consent Order")] The Consent Order assigned the rights of Tarragon and its co-defendants' rights in all of their insurance policies to the Association. Specifically, the Consent Order provided,

> With respect to the Tarragon Entities, the automatic stay of 11 U.S.C. § 362 be and the same is hereby lifted to allow the Association to proceed solely against liability insurance policies, if any, of the Tarragon Entities during the relevant time period giving rise to the Association's claims in the within action;
>
> . . .
>
> Subject to the above paragraphs, the Tarragon Entities assign to the Association, without representation or warranty, their rights and interests, if any, in the claim, if any, relating to the alleged losses suffered by Plaintiff in the within action and the Proofs of Claim (the "Claims") under liability insurance policies, if any, that may be applicable to the Claims for the limited purpose of allowing Plaintiff to pursue direct recovery against the Tarragon Entities for the Claims, only against any liability insurance policy, if any, issued to the Tarragon Entities, including but not limited to the following: . . . [the policy] issued by Mt. Hawley Ins. Co. . . . .

(Consent Order, ¶¶ 1, 4.c.)

Pursuant to the most recent scheduling order dated July 23, 2012, depositions of fact witnesses must be completed by October 8, 2012, expert reports by November 7, 2012, expert depositions and discovery by February 7, 2013. On August 8, 2012, the Association filed a fourth amended complaint asserting a claim against Mt. Hawley (the "Complaint"). [Doc. No. 312 ("Compl.")] The Complaint alleges that,

> Upon information and belief, [Mt. Hawley] . . . [issued a policy to] 1200 grand Street Urban Renewal Dev. LLC and 1300 Grand Street Urban Renewal Dev., LLC listed as Additional Named Insured.
>
> Pursuant to the Consent Order of the U.S. Bankruptcy Court, the Tarragon entities [sic] agreed to lift the automatic stay pursuant to 11 U.S.C. § 362 to allow Plaintiff by way of direct claim and Defendants via cross-claims, to proceed against the insurance policy for recovery for any damages caused by the Tarragon Entities, as well as any other insurance policy offering coverage to Tarragon.
>
> Pursuant to the Consent Order, the Tarragon Entities assigned to Plaintiff their rights and interest to assert claims against these insurance companies for damages as alleged in this matter.
>
> . . .
>
> By virtue of this assignment, . . . [Mt. Hawley and the other insurers] are liable to Plaintiff for damages caused by the Tarragon Entities, including but not limited to its or their misrepresentations under PREDFDA, breaches of fiduciary duty, negligent construction, breach of contract, attorney's fees, unconscionable commercial practices and fraud in violation of the Consumer Fraud Act, damages, compensatory damages, consequential damages, incidental damages, punitive damages, economic damages, violation of the Condominium Documents, breach of express and implied warranties contained in the Public Offering Statement, and failure to pay monthly maintenance fees prior to statutory turnover of the Tarragon Entities, as set forth more fully in the preceding paragraphs.
>
> Plaintiff accordingly seeks payment by the Insurance Company Defendants for an amount equal to the damages covered by any insurance policies issued by Axis [sic] to any and all of the Tarragon entities [sic], by virtue of the assignment of these claims to Plaintiff as set forth in the preceding paragraphs.

(Compl., ¶¶ 182, 183, 184, 186 and 187)

Mt. Hawley was first served with the Complaint on August 29, 2012. Service was accepted by the New Jersey Commissioner of Banking and Insurance. Prior to this date, Mt. Hawley had no claim or other information related to this litigation and is not a signatory to the Consent Order.

5

**DISCUSSION**

I. **Standard for Dismissal Under Federal Rule of Civil Procedure 12(b)(6) for Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief may be granted. Bankruptcy Rule 7012 provides that Rule 12(b)(6) applies in adversary proceedings. Federal Rule of Civil Procedure 8 provides that pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Upon considering a 12(b)(6) motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). The factual allegations contained in the complaint "must be enough to raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Furthermore, "[t]he allegations of the complaint should 'plausibly suggest' the pleader is entitled to relief." *Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315, 321 (3d Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1966). The Supreme Court clarified the "plausibility" standard in *Ashcroft v. Iqbal* by holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation omitted). "The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.*

II. **Whether Assignment of the Policy was Valid Under New Jersey Law**

Mt. Hawley asserts that Tarragon assigned its general rights under the policy, rather than a monetary claim stemming from actual loss, and that this action is prohibited by New Jersey law, absent consent from the insurer. Both Mt. Hawley and the Association rely on *Elat, Inc. v. Aetna Casualty and Surety Co.*, 280 N.J. Super. 62, 66–67 (App. Div. 1995), in support of their respective positions, thus commanding a review of that case.

In *Elat*, the plaintiff asserted claims against the estate of a former business owner to recover investigative and remediation costs incurred by the plaintiff in cleaning ground contamination from the business's prior operation. *Elat*, 280 N.J. Super. at 65. The plaintiff obtained a judgment against the estate for the costs incurred and future costs. *Id.* The estate, however, had a negative net value and could not satisfy the judgment. *Id.* To prevent the plaintiff from executing on the estate's other assets, the estate assigned to the plaintiff all of its rights and claims against its insurer. *Id.* The lower court granted the insurance company's motion to dismiss pursuant to non-assignment and non-joinder clauses in the underlying policies. *Id.* The appellate court reversed, noting that the underlying policy and language only prevented the assignment of the policy without consent, not assignment of a claim or loss. *Id.* at 66. The appellate court ultimately held that once a loss has occurred, there is no risk in allowing an assignment and, therefore, assignment of a claim is like assignment of debt, permissible, and

cannot be restricted by such clauses. *Id.* at 66-67 (citing *Ocean Accident and Guarantee Co. v. Southwestern Bell Tel. Co.*, 100 F.2d 441 (8th Cir. 1939)). The court stated that,

> No assignment [provisions within insurance policies] do not prevent the assignment after loss for the obvious reason that the clause by its own terms ordinarily prohibits merely the assignment of the policy, as distinguished from a claim arising thereunder, and the assignment before loss involves a transfer of a contractual relationship while the assignment after loss is the assignment of a right to a money claim.

*Id.* at 67 (citing 16 George J. Couch, *Couch Cyclopedia of Insurance Law* §63.40 (rev. 2d ed. 1983)). Lastly, the court noted that the purpose behind a no-assignment clause is to protect the insurer from insuring a risk other than that intended, but found that this purpose is not violated by an insured by assigning its claim for a loss that has already occurred. *Id.*

Here, Mt. Hawley's insurance contract expressly stated that consent is required for an assignment of the policy. (Dean Cert., Ex. 1, p. 14) ("No rights and duties under this policy may be transferred without [Mt. Hawley's] written consent except in the case of death of an individual insured.") No such consent has been given. Therefore, the only assignment that can have occurred by means of the Consent Order is the assignment of a claim, not general rights under the Mt. Hawley Policy. Mt. Hawley, the insurer, does not become the debtor of the Association until there is an "actual loss." *Elat*, 280 N.J. Super. at 66. ("An insurer becomes absolutely a debtor to the assured for the amount of the actual loss, to the extent of the sum insured, and it may be transferred or assigned like any other debt.").

Thus, while damages have been alleged, the Association has not incurred actual loss until there is a judgment fixing that amount. This Court finds that the Consent Order granted the Association only the right to assert "claims" against the Mt. Hawley Policy and those claims are limited to seeking relief directly from Mt. Hawley for a final judgment rendered against the Tarragon Entities or a settlement with the written consent of Mt. Hawley. The Consent Order does not grant the Association unfettered rights to assert causes of action against Mt. Hawley that it would have asserted against the Tarragon Entities. Mt. Hawley is only subject to claims for amounts owed on the Mt. Hawley Excess Policies, not the conduct of the Tarragon Entities. To hold otherwise would be to impute liability and duties on Mt. Hawley it did not bargain for. Such a decision would be contrary to Mt. Hawley's intention and public policy.

### III.    Whether the Association can Bring Suit Directly Against Mt. Hawley

Mt. Hawley also contends that New Jersey law prohibits a third party from directly suing the insurer in a tort action. *See Cruz-Mendez v. ISU/Insurance Services of San Francisco*, 156 N.J. 556 (1999). The Association argues that the general rule of *Cruz-Mendez* is inapplicable because it is not a third party, but rather an assignee of the rights held by the Tarragon Entities under the Mt. Hawley Policy.

The Association's argument is predicated on two findings: first, that the assignment was of the entire interest the Tarragon Entities held under the Mt. Hawley Policy; and, second, that the assignment was valid. As discussed above and pursuant to *Elat*, the most that could have been assigned without the consent of Mt. Hawley is the right to assert a claim and, therefore, the Association is not an assignee of the policy, but rather a third-party.

7

The Mt. Hawley Policy stated that Mt. Hawley would pay Tarragon's "ultimate net loss," which is defined as "all sums that the insured shall become legally obligated to pay as damages, whether by reason of final adjudication or settlement with our written consent." (Dean Cert., Ex. 1, p. 4) Additionally, the policy contains a No-Action Clause, restricting any person or organization from joining Mt. Hawley as a party or bringing any claim against Mt. Hawley until there has been a judgment or settlement. (*see* Dean Cert., Ex.1, p. 14) Even in the hands of the Tarragon Entities, the right to file a claim against the Policy would require a final judgment or settlement that exceeds all other insurance coverage held by the Tarragon Entities before Mt. Hawley would be liable under the Policy. Therefore, any claims that the Association seeks to file against the Policy at this stage are premature as there has been no determination as to any liability of the Tarragon Entities, the amount of the claims, coverage from other insurers, or the excess amount that would be covered by the Policy issued by Mt. Hawley.

For these reasons and those discussed above, the Court grants Mt. Hawley's Motion.[1] The assignment pursuant to the Consent Order granted only the right to assert a monetary claim based on a final judgment or settlement against the Tarragon Entities and, even then, only for an amount in excess of liabilities covered by other insurers of Tarragon pursuant to the Policy. Until such time that those amounts are fixed, Mt. Hawley is not liable to the Association for claims asserted on behalf of the Tarragon Entities.

## IV.    The Association's Cross-Motion Compelling Mt. Hawley to Provide a Defense

In its cross-motion, the Association seeks a declaration from the Court compelling Mt. Hawley to tender a defense for the Tarragon Entities against which the Association alleges damages resulting from negligence and other misconduct. Mt. Hawley provides two arguments in opposition and in support of why it should not be so compelled: (1) it is an excess carrier, and did not undertake a defense obligation in the excess insurance contract; and (2) the Tarragon Entities are not owed such a duty and, therefore, neither is the Association as an assignee.

Reviewing the provisions of the Policy makes clear that Mt. Hawley did not owe a duty to defend the Tarragon Entities in the event that they faced suit. The Mt. Hawley Policy provides that

> Although we shall not be obligated to assume charge of the investigation, defense or settlement of any claim or suit against the insured, we shall have the right and shall be given the opportunity to join with the insured or its claim servicing agency or both, in the investigation, defense or settlement of any claim or suit that, in our opinion, involves or appears reasonably likely to involve us.

(Dean Cert., Ex., p. 11) As discussed above, Mt. Hawley shall not be compelled to assume any liability or duty for which it had not contracted with the Tarragon Entities. This holds true for duties to defend the insured just as it does for limiting liability on claims. *see e.g. Campbell Soup Co. v. Liberty Mut. Ins. Co.*, 239 N.J. Super. 488, 495 (Ch. Div. 1990) ("The duty of the insurer to defend a third-party action brought against the insured arises out of the contract of insurance; if there is no contract to defend, there is no duty to defend."), *W9/PHC Real Estate LP*

---

[1] Mt. Hawley's request for a 60-day stay of discovery deadlines is rendered moot as a result of the Motion to Dismiss being granted.

*v. Farm Family Cas. Ins. Co.*, 407 N.J. Super. 177, 202 (App. Div. 2009) ("Since defendant's coverage was expressly excess, it does not have a duty to defend.")  It follows that since Mt. Hawley had no duty to defend the Tarragon Entities, one cannot be asserted by the Association.

       The Court finds that Mt. Hawley does not have a duty to tender a defense for the Tarragon Entities.  As such, the Plaintiff's Cross-Motion is denied.

## **CONCLUSION**

       For the reasons set forth above, Mt. Hawley's Motion to Dismiss is granted in relevant part and the Association's Cross-Motion is denied.

       An Order in conformance with this Opinion has been entered by the Court and a copy attached hereto.

*s/ Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated:    April 16, 2013